UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:

       METERED APPLIANCES INC.,
          Debtor.

--------------------------------------------------------x

Chapter 11
(Subchapter V)
Case No. 25-73481-ast

## SUBCHAPTER V PLAN OF REORGANIZATION
## OF METERED APPLIANCES INC.

Metered Appliances Inc., as debtor and debtor-in-possession (the "Debtor"), proposes this Subchapter V Plan of Reorganization (the "Plan") pursuant to §§ 1181–1195 and 1121–1129 of title 11 of the United States Code (the "Bankruptcy Code").

**1. ARTICLE I DEFINITIONS**

1.1. **Defined Terms**. As used in this Plan, the following terms have the meanings set forth below. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.2. "**Administrative Expense Claim**" means a Claim for costs and expenses of administration of the Chapter 11 Case under §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation professional fees and expenses allowed under § 330 and the fees and expenses of the Subchapter V Trustee.

1.3. "**Allowed**" means, with respect to any Claim, (a) a Claim that has been allowed by a Final Order, (b) a Claim that has been listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent and for which no proof of claim has been filed, or (c) a Claim as to which a proof of claim has been filed and no objection to allowance has been filed

within the applicable period fixed by the Bankruptcy Code, the Bankruptcy Rules, or an order of the Court.

1.4.    "**Ballot**" means the form approved by the Court on which holders of Claims entitled to vote on the Plan may indicate acceptance or rejection of the Plan.

1.5.    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of New York, or any other court with jurisdiction over the Chapter 11 Case.

1.6.    "**Bankruptcy Estate**" means the estate of the Debtor created under § 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.7.    "**Business Day**" means any day other than a Saturday, Sunday, or legal holiday on which banks in New York, New York, are open to conduct business.

1.8.    "**Chapter 11 Case**" means the Debtor's case under chapter 11, subchapter V of the Bankruptcy Code, pending in the Bankruptcy Court as Case No. 25-73481-ast.

1.9.    "**Claim**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

1.10.    "**Class**" means a category of Claims or Interests as defined in Article III of the Plan.

1.11.    "**Commitment Period**" means the 5 year period following the Effective Date (or such other period as the Court may approve) during which the Debtor is required to apply its projected disposable income to payments under the Plan pursuant to § 1191(c)(2)

1.12.    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case.

1.13.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan.

1.14.    "**Effective Date**" means the first Business Day that is at least fourteen (14) days after the entry of the Confirmation Order on which (a) the Confirmation Order has become a Final Order

and (b) all conditions to the effectiveness of the Plan set forth in Article IX have been satisfied or waived.

1.15.  "**Equipment Secured Claims**" means all Secured Claims held by any creditor whose Claim is secured by liens on the Debtor's laundry equipment, payment systems, and related collateral pursuant to one or more equipment finance agreements and UCC-1 financing statements, to the extent of the value of their collateral.

1.16.  "**General Unsecured Claim**" means any Claim that is not (a) an Administrative Expense Claim, (b) a Priority Claim, or (c) an Equipment Secured Claim.

1.17.  "**Interest**" means any equity interest in the Debtor, including the ownership interests of Norman Orner and Lenny Orner.

1.18.  "**Petition Date**" means September 9, 2025, the date on which the Debtor filed its voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code.

1.19.  "**Plan**" means this Subchapter V Plan of Reorganization, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code.

1.20.  "**Priority Claim**" means any Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim.

1.21.  "**Subchapter V Trustee**" means the individual appointed by the United States Trustee to serve as the trustee in this Chapter 11 Case pursuant to § 1183 of the Bankruptcy Code, together with any duly appointed successor.

1.22.  "**U.S. Trustee**" means the Office of the United States Trustee for Region 2.

1.23.  "**Unimpaired**" means a Class of Claims or Interests that is not impaired within the meaning of § 1124 of the Bankruptcy Code. Events Leading to the Chapter 11 Filing.

file appropriate supplements or amendments to this Plan to ensure accuracy and completeness prior to confirmation.

The purpose of this Plan is to place the Debtor on a sustainable financial footing by improving the organization of its financial operations, eliminating unprofitable locations, and restructuring secured equipment financing obligations through the cram-down provisions of Subchapter V. The Plan is designed to stabilize the Debtor's cash flow, simplify and regularize its accounting and reporting practices going forward, and ensure that equipment debt service is aligned with the actual revenue produced at each location.

By rejecting chronically unprofitable contracts, restructuring the secured claims of equipment lenders to reflect the value of their collateral, and committing the Debtor's projected disposable income to creditor payments, the Plan maximizes value for creditors while allowing the Debtor to continue operating its long-standing business. The Plan provides a fair and feasible roadmap for reorganization, preserves profitable customer relationships, ensures operational continuity, and positions the Debtor for long-term financial stability.

5.    **ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

5.1.    **<u>Administrative Expense Claims and Professional Fee Reserve.</u>** All Allowed Administrative Expense Claims, including the fees and expenses of the Debtor's counsel, Accountant and the Subchapter V Trustee, shall be paid in full in cash on the Effective Date, or upon such other terms as may be agreed upon between the Debtor and the holder of such Claim.

Pending allowance of final fee applications, the Debtor shall establish a Professional Fee Reserve in an amount sufficient to pay all estimated accrued and unpaid professional fees incurred through the Effective Date. Funds in the Professional Fee Reserve shall be used solely

to pay Allowed Administrative Expense Claims for professional fees as approved by the Court. Any unused amounts remaining in the Professional Fee Reserve, after payment of all such Allowed Claims, shall be distributed in accordance with this Plan.

**5.2.** **Priority Tax Claims.** Except to the extent otherwise agreed to by the holder of such Claim and the Debtor, each Allowed Priority Tax Claim shall be paid in full in Cash on the Effective Date, or in deferred Cash payments of a total value equal to the Allowed amount of such Claim, over a period not later than five (5) years from the Petition Date, in accordance with Bankruptcy Code §1129(a)(9)(C).

**5.3.** **General Rules of Classification.** Pursuant to §§ 1122 and 1123 of the Bankruptcy Code, all Claims and Interests are classified as set forth in this Article V. Administrative Expense Claims and Priority Tax Claims are not classified and will be treated in accordance with § 1129(a)(9). All other Claims and Interests are classified below.

**5.4.** SUMMARY OF CLASSIFIED CLAIMS AND INTERESTS.

The following Classes of Claims and Interests are established for purposes of voting on and receiving distributions under this Plan. A Claim or Interest is included in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is not otherwise entitled to priority under the Bankruptcy Code.

CLASS 1 – EQUIPMENT SECURED CLAIMS.

Each Allowed Class 1 Secured Claim shall retain its lien on the Debtor's equipment, payment systems, accounts, and proceeds to the extent of its Allowed Secured Claim under § 506(a). The Debtor shall satisfy each Allowed Class 1 Secured Claim through one or a combination of the following methods:

*(a)  Sale of Equipment or Lease Rights.*

The Debtor may sell certain equipment, assign lease or location rights, or otherwise dispose of collateral in one or more transactions, subject to Court approval where required. The lien of the applicable Class 1 creditor shall attach to the proceeds of such sale to the same extent, priority, and validity as existed in the collateral sold. Sale proceeds shall be applied to the Allowed Secured Claim up to the value of the collateral under § 506(a). Any deficiency shall be treated as a Class 3 General Unsecured Claim.

*(b)  Deferred Cash Payments.*

To the extent any portion of an Allowed Class 1 Secured Claim remains outstanding after application of sale proceeds, the Debtor shall make equal monthly payments of principal and interest over a term to be specified in the Plan Supplement, at an interest rate sufficient to provide the holder with the present value of its Allowed Secured Claim in accordance with §§ 1129(b)(2)(A) and 1191(c)(1).

*(c)  Liens on Replacement Collateral.*

To the extent collateral is replaced or proceeds are reinvested, the applicable Class 1 Creditor shall retain a lien on such replacement collateral and proceeds to the extent of its Allowed Secured Claim, consistent with §§ 361 and 363 of the Bankruptcy Code.

Any portion of a Class 1 Claim that exceeds the value of the collateral under § 506(a) shall be treated as a Class 3 General Unsecured Claim.

**Section 1111(b)(2) Election.**

The treatment of Class 1 Claims described in this Plan assumes that no holder of a Class 1 Equipment Secured Claim makes an election under § 1111(b)(2) of the Bankruptcy Code. To the extent any holder of an Allowed Class 1 Claim timely and properly elects treatment under § 1111(b)(2), the Claim of such holder shall be treated as a fully secured claim in the amount of its Allowed Claim, and the Debtor shall provide deferred cash payments having a total value, as of the Effective Date, equal to at least the Allowed amount of such Claim, and a present value not less than the value of the holder's interest in the collateral, in accordance with §§ 1111(b)(2), 1129(b)(2)(A), and 1191(c)(1). Any such modified treatment shall be set forth in the Plan Supplement or in the Confirmation Order.

**Impairment**: Class 1 is Impaired.

### CLASS 2 – PRIORITY NON-TAX CLAIMS.

Class 2 consists of any Allowed Priority Claims entitled to priority under § 507(a), other than Priority Tax Claims. Based on the Debtor's current review, the Debtor does not believe that any such Claims exist, including no outstanding payroll obligations. To the extent any Class 2 Claims are allowed, they will be paid in full as required by § 1129(a)(9), and Class 2 is unimpaired.

### CLASS 3 – GENERAL UNSECURED CLAIMS (IMPAIRED).

Class 3 consists of all Allowed Claims not included in any other Class, including trade claims, contract rejection damages, and deficiency claims arising from the equipment financing obligations. Class 3 is impaired because holders of Class 3 Claims will receive less than the full amount of their Allowed Claims and will be paid over time from the Debtor's projected disposable income during the Commitment Period. The Debtor is not yet able to estimate the percentage recovery for Class 3 due to the ongoing compilation of historical financial data and

2.    **ARTICLE II EVENTS LEADING TO THE CHAPTER 11 FILING.**

Metered Appliances Inc. is a family-owned business that has operated for more than sixty years, renting laundry room space in residential and multi-family buildings, installing and maintaining commercial washing machines, dryers, and payment systems, and paying rent or sharing revenue with building owners in exchange for the right to operate those facilities. The Debtor services a portfolio of locations across New York City, Long Island, and surrounding areas, and its operations include equipment financing, installation, routine maintenance and repair, revenue collection, reporting, and customer service.

The Debtor's operations include purchasing and financing commercial laundry equipment, installing the equipment in building laundry rooms, performing ongoing maintenance and repairs, collecting and accounting for laundry revenue, and providing responsive support to building management and residents. Many of the Debtor's customer relationships span decades and represent consistently recurring business, forming the foundation of the Debtor's revenue and long-term business stability.

3.    **ARTICLE III PURPOSE OF THE SUBCHAPTER V ELECTION.**

The Debtor elected to proceed under Subchapter V of Chapter 11 in order to reorganize its business efficiently and preserve its long-standing customer relationships. Subchapter V provides a streamlined restructuring process that is specifically designed for small businesses with ongoing operations, lower administrative costs, and the ability to confirm a plan funded by future earnings without the need for a separate disclosure statement.

The Debtor's objective in this Subchapter V case is to restructure certain equipment financing obligations associated with underperforming locations, realign debt service with actual

operating cash flow, and preserve the value inherent in its multi-decade customer relationships. Subchapter V allows the Debtor to stabilize operations, maintain continuity in the buildings it services, and maximize distributions to creditors through a viable long-term business model. The Debtor believes that Subchapter V provides the most practical and cost-effective means to achieve a successful reorganization while ensuring fair treatment of creditors.

4.    **ARTICLE IV SUMMARY OF THE PLAN.**

Preliminarily, the Debtor and its accountant have been reviewing and organizing multiple years of historical financial information in order to produce an accurate and reliable financial picture for purposes of this Plan. Because the Debtor is a sixty-year-old family-owned business that grew organically over several decades, its historical financial records were not maintained in a fully centralized or standardized format. As the business expanded and added new laundry locations over time, financial information was recorded in a combination of manual records, and outdated accounting software.

As a result, the Debtor's accountant has undertaken the substantial task of reviewing and organizing years of bank statements, equipment leases, service logs, rent and revenue- sharing records, and other location-specific financial documents to produce a complete and accurate historical financial picture. This work is detailed, time-intensive, and ongoing, but is being performed methodically to ensure accuracy and transparency.

Although the full compilation and reconciliation of historical financial records is not yet complete, the Debtor has sufficient verified financial and operational data to classify claims, identify the contracts to be assumed or rejected, estimate class treatment, and prepare reasonable projections for plan purposes. As the accountant verifies additional information, the Debtor will

claim reconciliation; estimated recoveries will be provided in a Plan Supplement.

**CLASS 4 – EQUITY INTERESTS (UNIMPAIRED).**

Class 4 consists of all ownership interests in the Debtor, held 50% by Norman Orner and 50% by Lenny Orner. Class 4 is unimpaired because equity holders will retain their interests pursuant to Subchapter V, subject to the terms of this Plan. Pursuant to § 1181(a), the absolute priority rule of § 1129(b)(2)(B) does not apply in this Subchapter V case. Accordingly, the holders of Class 4 Equity Interests may retain their ownership interests under the Plan notwithstanding that Class 3 General Unsecured Creditors are not paid in full.

**6.    ARTICLE VI SUBCHAPTER V CONFIRMATION STANDARDS UNDER §1191(B)**

In the event that one or more impaired Classes do not accept the Plan, the Debtor seeks confirmation under the "fair and equitable" provisions of § 1191(b) of the Bankruptcy Code. Unlike a traditional Chapter 11 case, the absolute priority rule does not apply in Subchapter V pursuant to § 1181(a). Instead, the Court must determine only that the Plan complies with the requirements of § 1191(b), which include the following:

**6.1.    BEST INTERESTS OF CREDITORS TEST.**

With respect to any impaired Class that does not accept the Plan, the Debtor satisfies the best interests of creditors requirement under § 1191(b) because holders of Claims in such Classes will receive at least as much under this Plan as they would receive in a Chapter 7 liquidation. The Debtor's primary assets consist of commercial laundry equipment that is encumbered by perfected security interests, and any liquidation of such assets would be subject to secured claims, administrative expenses, and the costs of sale. Under those circumstances, unsecured creditors would receive little, if any, recovery in Chapter 7. Accordingly, the Plan satisfies the

best interests test.

### 6.2. FAIR AND EQUITABLE TEST FOR GENERAL UNSECURED CLAIMS.

Under § 1191(b) and § 1191(c)(2), a plan is considered "fair and equitable" with respect to unsecured creditors if the Debtor commits all of its projected disposable income (or the value of such income) to be received over the applicable 3–5 year Commitment Period to payments under the Plan. The Debtor will devote all projected disposable income to holders of Allowed Class 3 Claims, with disposable income determined in accordance with the Debtor's operating budget and financial projections and subject to oversight by the Subchapter V Trustee and the Court.

### 6.3. FEASIBILITY.

Section 1191(c)(3) requires that the Debtor demonstrate the ability to make all payments required under the Plan or show a reasonable likelihood of doing so. The Debtor anticipates stable post-petition operations, reduced costs through the rejection of unprofitable contracts, and a reorganized debt structure that aligns equipment financing obligations with actual revenue. These factors demonstrate that the Plan is feasible.

The Debtor submits that the Plan satisfies all requirements of § 1191(b) and may be confirmed over the dissent of an impaired Class if necessary.

## 7. ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1. CONTINUED OPERATIONS.

Following the Effective Date, the Debtor shall continue to operate its laundry services business in the ordinary course, maintain profitable customer locations, and perform its contractual obligations under all Assumed Executory Contracts. The Debtor's continued operations will focus on locations that consistently generate positive net revenue, taking into account rent

obligations, equipment financing payments, and maintenance costs, and will exclude locations where historical operating results demonstrate that the revenue produced is not sufficient to support ongoing obligations. The Debtor will continue to install, service, and maintain laundry equipment, collect revenues, and manage its locations consistent with past practices, subject to the streamlined financial and operational structure established under this Plan.

### 7.2. FUNDING OF THE PLAN.

The Plan shall be funded through a combination of:

(a)    The Debtor's post-confirmation operating revenue;

(b)    The Debtor's projected disposable income during the applicable Commitment Period, to be distributed in accordance with § 1191(c)(2);

(c)    Proceeds from the sale or assignment of certain equipment, leases, or location rights, where such assets are not necessary for the Debtor's ongoing operations or are associated with unprofitable locations; and

(d)    Cash on hand as of the Effective Date, to the extent available.

All Plan payments shall be made either directly by the Debtor or through the Subchapter V Trustee if required by § 1191(c)(2) or further order of the Court.

### 7.3. USE OF CASH COLLATERAL AND ADEQUATE PROTECTION.

To the extent that any Equipment Secured Creditor asserts a security interest in cash collateral, including revenue from the Debtor's laundry operations, the Debtor shall provide adequate protection in the form of replacement liens on post-petition equipment, accounts, and proceeds to the extent of the creditor's interest under § 361. The Debtor shall comply with any cash collateral order entered in this case and shall continue to provide reasonable financial reporting to secured

creditors and the Subchapter V Trustee as required.

**7.4.    DISPOSABLE INCOME.**

During the applicable Commitment Period, the Debtor shall devote all of its projected disposable income (or the value of such income) to payments under the Plan in accordance with § 1191(c)(2). Disposable income shall be determined based on the Debtor's post- confirmation operating budget and financial projections and shall reflect the elimination of unprofitable locations and the restructured equipment financing obligations implemented under this Plan.

**7.5.    MANAGEMENT AND GOVERNANCE.**

The Debtor shall continue to be managed by its existing principals, Norman Orner and Lenny Orner, who shall retain their ownership interests and continue to oversee post-confirmation operations. No change in corporate governance is proposed under this Plan, and the Debtor expects continued operational stability through its experienced leadership.

**7.6.    FEASIBILITY.**

The Debtor believes that it will be able to make all payments required under the Plan and that confirmation is not likely to be followed by liquidation or further reorganization. Feasibility is supported by: (a) the elimination of chronically unprofitable locations; (b) the restructuring of secured obligations so that equipment payments align with actual revenue; (c) the Debtor's long-standing operational history; (d) reliable recurring revenue from profitable locations; and (e) the Debtor's projected disposable income for the Commitment Period.

**7.7.    DISBURSEMENT OF PLAN PAYMENTS.**

Unless otherwise ordered by the Court or required by § 1191(c)(2), Plan payments shall be made directly by the Debtor. If the Plan is confirmed under § 1191(b), the Subchapter V Trustee shall

receive and disburse payments to holders of Allowed Claims as required by the Bankruptcy Code.

**7.8.    TIMING AND TREATMENT OF DISTRIBUTIONS TO CLASS 3 UNSECURED CREDITORS.**

Distributions to holders of Allowed Class 3 Claims shall be made annually during the Commitment Period, unless otherwise ordered by the Court. Any distribution that is not claimed or that is returned as undeliverable within ninety (90) days after the date of mailing shall be void, and the underlying Claim shall be deemed satisfied to the extent of such distribution. The Debtor shall have no further obligation with respect to any such distribution.

**8.    ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1.        EXECUTORY CONTRACT AND UNEXPIRED LEASES.**

**8.2.    **To improve liquidity and reduce secured debt obligations, the Debtor is authorized to sell certain laundry equipment, assign lease or location rights, or otherwise dispose of assets that are no longer profitable or necessary for reorganization, subject to Court approval where applicable. The lien of any Class 1 Equipment Secured Creditor shall attach to the sale proceeds to the same extent, priority, and validity as existed in the collateral sold. Sale proceeds shall be applied to the associated Allowed Secured Claim, with any remaining balance treated in accordance with Article V.

**8.3.    ASSUMPTION AND REJECTION GENERALLY.**

Pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code, the Debtor shall assume or reject each Executory Contract and Unexpired Lease of the Debtor as set forth in this Article VIII or in the Plan Supplement. Any Executory Contract or Unexpired Lease not expressly assumed herein or in the Plan Supplement shall be deemed rejected on the Effective Date.

### 8.4.   LOCATION AGREEMENTS AND LAUNDRY ROOM CONTRACTS.

The Debtor operates its business pursuant to numerous location agreements and laundry room service contracts across New York City, Long Island, and surrounding areas. These agreements grant the Debtor the right to install, maintain, and operate commercial laundry equipment in residential and multi-family buildings in exchange for rent payments or revenue-sharing arrangements.

These agreements vary significantly in structure, profitability, rent obligations, duration, renewal terms, and equipment financing burdens. The viability of the Debtor's reorganized business model depends on retaining profitable locations and discontinuing operations at locations that historically failed to generate sufficient revenue to support equipment financing payments, maintenance costs, and building rent or commissions.

### 8.5.   ASSUMPTION OF PROFITABLE AND ESSENTIAL CONTRACTS.

The Debtor shall assume all Executory Contracts and Unexpired Leases that are determined to be profitable, essential to operations, or necessary to maintain stable cash flow. A schedule of assumed agreements, including their cure amounts, if any, shall be filed in the Plan Supplement.

The Debtor shall cure any monetary defaults under an Assumed Executory Contract or Unexpired Lease in accordance with § 365(b)(1). If a dispute arises as to the cure amount, the Debtor shall pay the undisputed portion on the Effective Date and resolve the remainder by agreement or further order of the Court.

### 8.6.   REJECTION OF UNPROFITABLE OR BURDENSOME CONTRACTS.

The Debtor shall reject Executory Contracts and Unexpired Leases associated with chronically unprofitable locations, including (but not limited to) locations where:

(a) rent payments or revenue-sharing obligations exceed revenues generated,

(b) equipment financing costs exceed location income,

(c) maintenance calls or equipment condition result in persistent losses,

(d) building management disputes make continuation impracticable, or

(e) historical data shows negative or minimal net operating income.

A schedule of rejected agreements will be included in the Plan Supplement. Rejection shall constitute a breach as of the Petition Date, and any resulting rejection damage Claims shall be treated as Class 3 General Unsecured Claims.

### 8.7.  SURRENDER OF REJECTED LOCATIONS; COORDINATION WITH EQUIPMENT SECURED CREDITORS.

For each Rejected Location, the Debtor shall coordinate with the applicable building owner and any Equipment Secured Creditor to remove the equipment or permit the creditor to recover its collateral. The Debtor shall not be required to continue paying rent, commissions, or other charges for any location rejected under this Plan after the Effective Date.

### 8.8.  EQUIPMENT FINANCE AGREEMENTS.

To the extent any equipment finance agreement constitutes an Executory Contract, such agreement shall be rejected unless specifically assumed by the Debtor. The secured portion of any claim arising from such agreement shall be treated as a Class 1 Equipment Secured Claim, and any deficiency or contract-based rejection damages shall be treated as a Class 3 General Unsecured Claim.

### 8.9.  FUTURE MODIFICATIONS OR AMENDMENTS TO LOCATION AGREEMENTS.

Nothing in this Plan shall prevent the Debtor from renegotiating terms with building owners, modifying existing agreements, entering into new location agreements, or expanding its footprint

post-confirmation, provided such actions are consistent with the Debtor's post-confirmation business judgment and feasibility projections.

### 8.10. RESERVATION OF RIGHTS.

The Debtor reserves all rights to object to any cure claim, rejection damage claim, or other claim arising from or related to an Executory Contract or Unexpired Lease, whether listed in the Debtor's schedules or asserted by proof of claim. The Debtor also reserves the right to amend the list of assumed or rejected contracts at any time prior to the Effective Date, subject to Court approval where required.

### 8.11. INDEMNIFICATION AGREEMENTS.

All indemnification provisions in contracts assumed by the Debtor shall survive and remain enforceable to the extent permitted by bankruptcy law.

### 8.12. INSURANCE CONTRACTS.

All insurance policies and insurance-related contracts are deemed assumed as of the Effective Date unless expressly rejected in the Plan Supplement.

## 9. ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 9.1. CONDITIONS TO CONFIRMATION.

Confirmation of the Plan shall be conditioned upon entry of a Confirmation Order in form and substance reasonably acceptable to the Debtor.

### 9.2. CONDITIONS TO EFFECTIVE DATE.

The Plan shall not become effective unless and until the following conditions have been satisfied or waived by the Debtor:

(a) The Confirmation Order shall have become a Final Order;

(b) All documents necessary to implement the Plan and any Plan Supplement shall have been executed and delivered;

(c) All required approvals of any regulatory or governmental authority, if any, shall have been obtained; and

(d) All fees due to the U.S. Trustee and any unpaid allowed Administrative Expense Claims required to be paid on the Effective Date shall have been paid or adequate provision made for such payment.

**9.3.    Waiver of Conditions.**

The Debtor may waive any of the foregoing conditions, in whole or in part, without further order of the Court.

**10.    ARTICLE X OBJECTIONS TO CLAIMS.**

**10.1.**    The Debtor or any other party with standing may object to any Claim, and the Bankruptcy Court shall retain jurisdiction to determine all such objections. No distribution shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

**10.2.    ESTIMATION OF CLAIMS.**

The Debtor may request that the Court estimate any Claim for purposes of allowance, voting, or distribution if the fixing or liquidation of such Claim would unduly delay administration of the case.

**11.    ARTICLE XI SUBCHAPTER V REQUIREMENTS AND OTHER PLAN PROVISIONS**

**11.1.    DISPOSABLE INCOME REQUIREMENT.**

If the Plan is confirmed under § 1191(b), the Debtor shall devote all of its projected disposable income, or the value of such income, for the applicable Commitment Period to payments under

the Plan in accordance with § 1191(c)(2). Disposable income shall be determined in accordance with the Debtor's post-confirmation operating budget and financial projections, as reviewed by the Subchapter V Trustee and subject to Court approval. Distributions to Class 3 shall be made from such disposable income.

### 11.2. ROLE OF THE SUBCHAPTER V TRUSTEE AFTER CONFIRMATION.

If the Plan is confirmed under § 1191(b), the Subchapter V Trustee shall continue to serve after confirmation for purposes of receiving and disbursing Plan payments to creditors as required by § 1191(c)(2) and performing other duties consistent with § 1183. The Trustee's service shall terminate upon substantial consummation of the Plan or as otherwise ordered by the Court. If the Plan is confirmed under § 1191(a), the Trustee's role shall terminate as provided under § 1183(c).

### 11.3. RETENTION OF LIENS; FAIR AND EQUITABLE TREATMENT OF SECURED CLAIMS.

Each holder of a Class 1 Equipment Secured Claim shall retain its lien on the Debtor's equipment, payment systems, accounts, and proceeds to the extent of the value of its collateral under § 506(a), and such lien shall attach to any sale proceeds or replacement collateral as provided in Articles III and IV. The treatment of Class 1 Claims satisfies the requirements of §§ 1129(b)(2)(A) and 1191(c)(1).

### 11.4. DISCHARGE.

If the Plan is confirmed under § 1191(b), the Debtor shall receive a discharge of all debts provided for in the Plan upon completion of all payments due within the Commitment Period, pursuant to § 1192. If the Plan is confirmed under § 1191(a), the Debtor shall receive a discharge as of the Effective Date pursuant to § 1141(d), except as otherwise provided in the Plan or confirmation order.

### 11.5.    VESTING OF ASSETS.

On the Effective Date, all property of the Debtor and of the Bankruptcy Estate shall vest in the Debtor free and clear of all Claims and Interests, except as otherwise provided in this Plan, the Confirmation Order, or documents executed in connection with the Plan.

### 11.6.    PLAN SUPPLEMENT.

The Debtor may file a Plan Supplement prior to the Confirmation Hearing containing:

(a) schedules of Assumed and Rejected Executory Contracts; (b) amortization schedules for Class 1 Claims; (c) financial projections; (d) a liquidation analysis; and (e) any other documents necessary to implement the Plan. The Plan Supplement shall be deemed incorporated into the Plan as if fully set forth herein.

### 11.7.    MODIFICATION OF THE PLAN.

The Debtor may modify this Plan prior to confirmation pursuant to § 1193(a). After confirmation, the Debtor may seek modification pursuant to § 1193(b) to the extent permitted by the Bankruptcy Code, provided that such modification does not materially adversely affect the rights of any creditor without such creditor's consent.

## 12.    MISCELLANEOUS PROVISION

### 12.1.    HEADINGS.

The headings used in this Plan are for convenience of reference only and shall not limit, modify, or affect the meaning or interpretation of any provision of the Plan.

### 12.2.    NOTICES.

All notices, requests, and demands required or permitted to be provided under the Plan shall be in writing and shall be deemed to have been duly given when (a) filed on the Bankruptcy Court

docket, (b) sent by first-class mail, postage prepaid, (c) delivered by hand, overnight courier, or other messenger service, or (d) sent by electronic mail.

All notices under the Plan shall be sent to the Debtor through its counsel at the following address:

> Law Offices of Charles Wertman P.C.
> 100 Merrick Road, Suite 304W
> Rockville Centre, New York 11570
> Attn. Charles Wertman, Esq.
> (516) 284-0900
> Email: **charles@cwertmanlaw.com**

Any creditor or party in interest may update its notice address by filing a notice of change of address with the Bankruptcy Court in this Chapter 11 Case. Notice shall be deemed sufficient if provided to the most recent address of record for such party.

### 12.3.    Governing Law.

Except to the extent the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of New York, without regard to its conflicts of law principles.

**12.4.    RETENTION OF JURISDICTION.**

The Court shall retain jurisdiction after confirmation for all purposes permitted under the Bankruptcy Code, including: (a) allowance and disallowance of Claims; (b) resolution of disputes regarding executory contracts; (c) enforcement of the Plan; (d) modifications of the Plan; (e) sales of equipment or lease rights; (f) plan interpretation; and (g) entering discharge orders under § 1192.

**12.5.    BINDING EFFECT.**

This Plan shall be binding upon the Debtor, all holders of Claims and Interests, and all other parties in interest, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder accepts the Plan.

**12.6.    SEVERABILITY.**

If, prior to confirmation, any provision of the Plan is determined by the Court to be unenforceable, such determination shall not limit or affect the enforceability of any other provision of the Plan. If, after confirmation, any provision of the Plan is held to be unenforceable, the remainder of the Plan shall remain in full force and effect and shall be implemented to the maximum extent possible consistent with applicable law and the Court's ruling.

**12.7.    Entire Agreement.**

The Plan, together with the Confirmation Order and any Plan Supplement, constitutes the entire agreement and understanding among the Debtor and all holders of Claims and Interests with respect to the matters addressed herein, and supersedes all prior agreements and understandings, whether written or oral, relating to such matters. No prior or contemporaneous representation,

promise, or inducement shall alter or modify the terms of the Plan unless expressly incorporated herein.

**12.8.** Conflicts.

In the event of any inconsistency or conflict between (a) the terms of this Plan and the terms of any Plan Supplement, the terms of the Plan Supplement shall control; and (b) the terms of this Plan or any Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control. Except as provided in the preceding sentence, the provisions of this Plan shall govern and be binding.

Dated:  December 8, 2025
   Brooklyn, New York

METERED APPLIANCES INC.
Debtor and Debtor-in-Possession

By:_____
Norman Orner
Title_____VP_____

By:_____
Lenny Orner
Title_____President_____

Submitted by:
/s/ *Charles Wertman*

_____
Charles Wertman, Esq.
Law Offices of Charles Wertman P.C.
100 Merrick Road, Stet 304W
Rockville Centre, New York 11570
Attn. Charles Wertman, Esq.
(516) 284-0900
Email: **charles@cwertmanlaw.com**

The signed document can be validated at https://app.vinesign.com/Verify