UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

METERED APPLIANCES INC.,

Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11

Subchapter V

Case No. 25-73481 (JPM)

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN LAUNDRY ROOM ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 105 AND 363, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN BUILDING AGREEMENTS AND FIXING CURE AMOUNTS PURSUANT TO 11 U.S.C. § 365, (III) AUTHORIZING THE REJECTION OF CERTAIN OTHER BUILDING AGREEMENTS PURSUANT TO 11 U.S.C. § 365(a), (IV) WAIVING THE STAYS IMPOSED BY BANKRUPTCY RULES 6004(h) AND 6006(d), AND (V) GRANTING RELATED RELIEF**

Metered Appliances Inc., the debtor and debtor in possession herein (the **"Debtor"**), by its counsel, Law Offices of Charles Wertman P.C., respectfully submits this motion (the **"Motion"**) for entry of an order, substantially in the form annexed hereto as **Exhibit "D"**, (i) authorizing the sale of certain of the Debtor's laundry room assets to CPIL LLC free and clear of all liens, claims, encumbrances, and interests pursuant to sections 105 and 363 of title 11 of the United States Code (the **"Bankruptcy Code"**), (ii) authorizing the assumption and assignment of four building agreements and fixing the cure amounts payable in connection therewith pursuant to section 365 of the Bankruptcy Code, (iii) authorizing the rejection of two other building agreements pursuant to section 365(a), (iv) waiving the stays imposed by Bankruptcy Rules 6004(h) and 6006(d), and (v) granting related relief, and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. By this Motion the Debtor seeks approval of a going concern sale of six of its interior laundry room operations to CPIL LLC for an aggregate purchase price of $117,500.00. The sale is the product of a process that produced two prospective purchasers, one of whom was referred

to the Debtor by the subchapter V trustee, and it will generate the funds necessary to make a meaningful distribution to unsecured creditors under the Debtor's Second Amended Subchapter V Plan.

2.      The transactions are documented in two separate asset purchase agreements with the same purchaser, one covering a single Brooklyn location at $17,500.00, the other covering five locations at $100,000.00. They are deliberately not cross defaulted, so that a failure to close on one does not defeat the other. The Debtor seeks approval of both in this single Motion, and asks that the Court be free to approve either independently of the other.

3.      The alternative to the sales is rejection of the underlying agreements and abandonment of the equipment, which is the relief the Debtor sought by motion filed at ECF No. 40 before this opportunity emerged. That course realizes nothing for the estate. The value of laundry equipment lies almost entirely in its being installed and in service. A washer or dryer removed from a building laundry room is worth a fraction of the same machine in place, and the cost of removal falls on whoever removes it. The Purchaser is paying for operating installations, not for machines.

4.      The transactions convert those installations into $25,000.00 in cash at closing, a further $5,000.00 payable forty-five days after closing subject to verification of the income at the locations sold, and $87,500.00 payable to the estate over thirty-six months under two secured promissory notes, against cure obligations of $16,600.00 under the structure described below.

5.      The Debtor respectfully requests that this Motion be heard on shortened notice, as set forth in the application filed contemporaneously herewith, so that the sale may close in time to fund distributions under a plan confirmed on or before September 8, 2026, in accordance with

this Court's order entered May 15, 2026 [ECF No. 58].

6.      This Motion is filed together with the Debtor's Second Amended Subchapter V Plan, which annexes the liquidation analysis required by section 1190(1)(B) of the Bankruptcy Code and the projections required by section 1190(1)(C), and follows the Debtor's response to the motion of the United States Trustee and the Debtor's monthly operating report for June 2026 [ECF No. 74].

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).

## BACKGROUND

9.      On September 9, 2025 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Salvatore LaMonica serves as the subchapter V trustee (the **"Subchapter V Trustee"**).

10.     The Debtor operates coin and card operated interior laundry room facilities in residential cooperative, condominium, and apartment buildings in the New York metropolitan area. The

Debtor installs and maintains washers, dryers, and payment systems in building laundry rooms pursuant to agreements with the building owners, and derives its revenue from the machines.

11.    The Debtor filed its subchapter V plan on December 8, 2025 [ECF Nos. 19, 20] and its First Amended Subchapter V Plan on April 17, 2026 [ECF Nos. 52, 53]. By order entered May 15, 2026 [ECF No. 58], this Court directed that the Debtor obtain confirmation of a plan on or before September 8, 2026. The United States Trustee has moved to convert or dismiss this case [ECF No. 21], as supplemented [ECF No. 70]. That motion is presently before the Court, and the Debtor has responded to it.

12.    On March 6, 2026 the Debtor filed a motion to reject certain leases and executory contracts [ECF No. 40]. Following the filing of that motion the Debtor was approached by a prospective purchaser interested in acquiring certain of the laundry room operations as a going concern, and thereafter the Subchapter V Trustee referred a second prospective purchaser to the Debtor. The Debtor reported these developments to the Court at the hearings held June 24, 2026 and July 8, 2026.

13.    The Debtor determined, in the exercise of its business judgment, that a sale of the affected operations would realize materially greater value for the estate than rejection, and negotiated with both interested parties. CPIL LLC submitted the better of the two proposals.

14.    The two letters of intent delivered by CPIL LLC, dated June 15, 2026 and July 14, 2026, are annexed to the Debtor's response to the motion of the United States Trustee, filed contemporaneously herewith, as **Exhibit A** thereto. The letters are non-binding by their terms and have been superseded by the Purchase Agreements described below, which differ from the letters in certain respects and which control.

**THE PROPOSED TRANSACTION**

15.    The Debtor and CPIL LLC, a New York limited liability company (the **"Purchaser"**), have agreed upon the terms of two separate asset purchase agreements (together, the **"Purchase Agreements"**), copies of which, in the form circulated for execution, are annexed hereto as **Exhibits "A" and "B"**.

16.    The **Brooklyn Agreement** (**Exhibit "A"**), which follows the letter of intent dated June 15, 2026, provides for the sale of the Debtor's assets at one laundry room location, 2020 East 41st Street, Brooklyn, New York, for $17,500.00, consisting of $5,000.00 in cash at the closing of the sales (the "Closing")and a secured promissory note in the principal amount of $12,500.00 bearing interest at five percent per annum, payable in thirty-six monthly installments of $374.64.

17.    The Portfolio Agreement (**Exhibit "B"**), which follows the letter of intent dated July 14, 2026, provides for the sale of the Debtor's assets at five laundry room locations for $100,000.00, consisting of $20,000.00 in cash at closing, a further $5,000.00 payable forty-five days after closing subject to verification of the income at the locations sold, and a secured promissory note in the principal amount of $75,000.00 bearing interest at five percent per annum, payable in thirty-six monthly installments of $2,247.82.

18.    The assets to be sold under the Purchase Agreements (the "Acquired Assets") consist of the Debtor's laundry equipment, card and payment systems, route records, and related personal property at the six locations identified on **Exhibit "C"** hereto (the "Locations").

19.    The two Purchase Agreements are separate and independent contracts. Neither is conditioned upon the other, and neither is cross defaulted with the other. Each note is secured by a first priority lien on the assets sold under the agreement to which it relates, perfected by the

filing of a financing statement. Together the notes provide the estate, and following confirmation the reorganized Debtor, with $2,622.46 per month, or approximately $31,469 per year, in addition to operating income.

20.      The Purchase Agreements have been circulated to the Purchaser in definitive form and have not yet been executed. The Debtor will file executed counterparts of both agreements prior to the hearing on this Motion, and does not ask the Court to approve either transaction on any other basis. The Purchaser is not an insider of the Debtor and is not affiliated with the Debtor or any of its principals, and each Purchase Agreement was negotiated at arm's length and in good faith. The material terms are summarized in the table below. That summary is qualified in its entirety by the Purchase Agreements, which control.

| Term | Brooklyn Agreement | Portfolio Agreement |
|---|---|---|
| Locations | 1 | 5 |
| Purchase price | $17,500.00 | $100,000.00 |
| Cash at closing | $5,000.00 | $20,000.00 |
| Payment at 45 days | None | $5,000.00 |
| Secured note principal | $12,500.00 | $75,000.00 |
| Interest rate | 5% per annum | 5% per annum |
| Note term | 36 months | 36 months |
| Monthly installment | $374.64 | $2,247.82 |
| Closing | 5 business days after entry of the Sale Order | 5 business days after entry of the Sale Order |

21.      The aggregate consideration under both Purchase Agreements is $117,500.00, consisting of $25,000.00 in cash at closing, $5,000.00 payable forty-five days after closing, and $87,500.00 in secured notes.

## THE TREATMENT OF THE BUILDING AGREEMENTS

22.     The Debtor asks the Court to treat the building agreements at the six Locations in two different ways, and sets out its reasoning candidly because the difference is material to what the estate realizes.

23.     Section 365(b)(1) of the Bankruptcy Code conditions assumption on cure of all defaults. The Debtor has reconciled the arrears at each of the six Locations. They total approximately $106,715, against combined consideration of $117,500. Were the Debtor to assume and assign all six agreements, substantially the entire purchase price would be consumed by cure payments, the estate would retain on the order of $10,000, and two counterparties would be paid in full in cash ahead of every other creditor in this case. The Debtor does not believe it could responsibly ask the Court to approve that result, and does not ask it.

24.     The arrears are, however, highly concentrated. Four of the six Locations carry arrears totaling $16,600, and the remaining two carry $90,115. The amounts required to cure defaults under the agreements the Debtor proposes to assume are referred to herein as the "Cure Amounts."

| Location | Proposed treatment | Cure amount |
| --- | --- | --- |
| 2020 East 41st Street, Brooklyn | Assume and assign | $0.00 |
| 150 Duncan Elder Drive | Assume and assign | $6,000.00 |
| 33-47 Floral Boulevard | Assume and assign | $5,300.00 |
| 4 North Lewis Place | Assume and assign | $5,300.00 |
| Subtotal, assumed and cured in full | | $16,600.00 |
| 301 East 79th Street | Reject | $39,580.00 |
| 750/730 West Broadway (Sandcastle) | Reject | $50,535.00 |

| Arrears at Locations not assumed | | $90,115.00 |
|---|---|---|
| Total arrears at the six Locations | | $106,715.00 |

25.    As to the four Locations in the first group, the Debtor will assume the building agreements and assign them to the Purchaser, and will pay the cure amounts set forth above in full at or promptly following the Closing. The Debtor will cure in full, as section 365(b)(1) requires, every agreement it assumes, and it proposes to assume no agreement it cannot cure.

26.    As to 301 East 79th Street and 750/730 West Broadway (the Sandcastle), the Debtor will reject the building agreements pursuant to section 365(a) effective as of the Closing and will sell the equipment located there free and clear under section 363. The Purchaser will negotiate its own arrangements with those two building owners at its own risk and expense. No cure obligation arises as to a rejected agreement, and the resulting claims, including any claim for damages arising from rejection, will be treated as general unsecured claims under the Debtor's plan on the same terms as every other unsecured claim rather than paid in cash ahead of them. The Debtor remains in discussion with both counterparties, and if either agrees to a cure the estate can fund, the Debtor will assume and assign that agreement and advise the Court.

27.    The Debtor submits that this allocation is the sound exercise of its business judgment. It preserves the going concern value of the equipment at all six Locations, it satisfies in full every counterparty whose agreement the estate is able to assume, and it converts into general unsecured claims the two obligations the estate cannot fund without consuming the entire purchase price.

28.    The Debtor emphasizes that the Cure Amounts are not distributions on account of prepetition claims. Section 365(b)(1) of the Bankruptcy Code makes cure a condition of

assumption, and the estate pays those amounts because it is receiving the benefit of the assumed agreements and assigning them for value. The counterparties whose agreements are rejected are not treated less favorably than similarly situated creditors, because a counterparty to an assumed contract and a counterparty to a rejected contract are not similarly situated.

29.    The Debtor will conform its pending motion to reject leases [ECF No. 40] to this treatment. Of the six Locations, only 4 North Lewis Place appears on the schedule of agreements annexed to that motion and is now proposed to be assumed, and the Debtor will amend that schedule to remove it. 301 East 79th Street also appears on that schedule and is being rejected, which is consistent with the treatment set forth above and requires no amendment. The remaining four Locations do not appear on that schedule.

### THE POSITION OF THE BUILDING OWNERS

30.    The building owners are the parties most directly affected by this Motion, and the Debtor addresses their position directly rather than leaving it to be inferred from the relief requested.

31.    As to the four Locations proposed to be assumed and assigned, the counterparty is paid the full amount of its arrears in Cash at or promptly following the Closing, its laundry room continues to operate without interruption, and the equipment in place remains in place. The Debtor will remain current on its ordinary course obligations at each of the six Locations through the Closing. Any counterparty that disputes the Cure Amount proposed for its agreement may object in accordance with the procedures set forth below, and the Debtor will endeavor to resolve any such dispute consensually.

32.    As to 301 East 79th Street and 750/730 West Broadway, the Debtor states plainly what this Motion does and does not do. The Debtor is selling its own personal property. Neither

Purchase Agreement conveys to the Purchaser any interest in either building, any right to occupy space in either building, or any right arising under the rejected agreement. The building owner at each of those two Locations retains every right it has under applicable non-bankruptcy law with respect to the presence of equipment on its premises, and the Purchaser acquires the equipment subject to those rights and at its own risk. If the Purchaser and the building owner do not reach agreement, the Purchaser must remove the equipment at its own expense and within a reasonable period. The Debtor requests that the Sale Order so provide.

33.     The Debtor does not minimize what rejection means for those two counterparties. Their arrears, $39,580.00 and $50,535.00 respectively, will not be cured. Those amounts, together with any claim for damages arising from rejection, will be treated as general unsecured Claims under the Debtor's plan on the same terms as every other unsecured Claim. The Debtor reached that result because the alternative was to consume the entire sale price curing two Locations and to leave the estate with substantially nothing for anyone else. The Debtor remains in discussion with both counterparties, and if either agrees to a cure the estate can fund, the Debtor will assume and assign that agreement and will advise the Court at or before the hearing.

34.     As to the further locations addressed in the Debtor's pending motion to reject [ECF No. 40], for which no purchaser has been found, the Debtor does not propose simply to walk away from the equipment. The laundry equipment installed at those locations has value, and that value depends on the machines remaining installed and in service rather than being removed. Before any abandonment, the Debtor will offer that equipment for sale to the building owners and to successor operators, subject to the liens asserted against it and to any further order of this Court, and will report the results to the Court before confirmation. A building owner at any such

location that wishes to acquire the equipment serving its own laundry room should contact the Debtor's counsel.

35. Finally, the Debtor requests that the Court fix a deadline, not later than seven days before the hearing on this Motion, by which any counterparty to an Assumed Contract must file an objection to the proposed Cure Amount or to the assumption and assignment of its agreement, and that the Sale Order provide that a counterparty that does not timely object is deemed to have consented to the Cure Amount proposed for its agreement and to the assumption and assignment of that agreement to the Purchaser.

36. The Locations, the executory contracts and unexpired leases to be assumed and assigned to the Purchaser in connection therewith (the "Assumed Contracts"), the counterparties thereto, and the Debtor's proposed cure amounts under section 365(b)(1) are set forth on **Exhibit "C"** hereto.

37. The Debtor will retain all of its other laundry room operations, which will continue to generate the operating income that, together with the proceeds of the sale, will fund the Debtor's Second Amended Subchapter V Plan.

## RELIEF REQUESTED

38. By this Motion, the Debtor requests entry of an order (the "Sale Order") (a) authorizing the sale of the Acquired Assets to the Purchaser free and clear of all liens, claims, encumbrances, and interests pursuant to sections 363(b) and 363(f) of the Bankruptcy Code; (b) authorizing the assumption and assignment of the Assumed Contracts pursuant to section 365 and fixing the Cure Amounts; (c) authorizing the rejection of the building agreements at 301 East 79th Street and at 750/730 West Broadway pursuant to section 365(a), effective as of the Closing; (d) finding

that the Purchaser is a good faith purchaser entitled to the protections of section 363(m); (e) waiving the stays imposed by Bankruptcy Rules 6004(h) and 6006(d); and (f) granting related relief.

**BASIS FOR RELIEF**

A.    THE SALE REFLECTS A SOUND EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT

39.    Section 363(b)(1) of the Bankruptcy Code provides that a trustee or debtor in possession "may use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing. 11 U.S.C. § 363(b)(1). In this Circuit a court should approve a sale under section 363(b) where the debtor demonstrates "some articulated business justification" for the transaction. *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992). Courts consider, among other factors, the proportionate value of the asset to the estate as a whole, the amount of elapsed time since filing, the likely effect on any future plan, the proceeds to be obtained relative to appraised value, and whether the asset is increasing or decreasing in value. *Lionel*, 722 F.2d at 1071.

40.    Each consideration favors approval here. The Locations represent a discrete portion of the Debtor's operations that the Debtor had already determined it could not continue to service profitably, so much so that the Debtor had moved to reject the underlying agreements. The proposed sale converts assets the estate was prepared to abandon into $117,500 of consideration. The transaction enables rather than sidesteps the plan process, because the proceeds are a principal source of the distribution to unsecured creditors under the Second Amended Plan. The value of the assets is declining, both because the equipment depreciates and because obligations continue to accrue at the Locations each month the disposition is delayed.

41.     The consideration should be measured against what the estate would realize on any other disposition of these assets. The Debtor's internal equipment records carry the machines at the Locations at figures materially above the purchase price, but those figures assume equipment installed and generating revenue on a functioning route. Realizing on the equipment on any other basis means disconnecting and removing machines that are plumbed, vented, and wired into the basements of buildings the Debtor does not own, at the estate's expense, and reselling used commercial laundry equipment into a wholesale market. No party has offered to buy the equipment for removal, and the Debtor is aware of no market in which it could be sold on that basis for a meaningful sum after removal costs. The Debtor will make its equipment records available to any party in interest on request.

42.     The sale price was tested in the market. The Debtor received expressions of interest from two unrelated prospective purchasers, the second of whom was referred by the Subchapter V Trustee, and accepted the better of the two proposals. The sale also remains subject to higher and better offers as set forth below.

**B.     THE SALE SHOULD BE FREE AND CLEAR OF LIENS UNDER SECTION 363(F)**

43.     Section 363(f) permits a sale free and clear of any interest in property if any one of five conditions is satisfied. *See* 11 U.S.C. § 363(f)(1)-(5); *In re Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010) (the subsections are disjunctive). The parties asserting secured claims against the Debtor's laundry equipment, per the claims register in this case, are Eastern Funding LLC (Claim No. 18, asserted at $500,000.00) and Clean Laundry Funding (Claim Nos. 10, 11, and 12, asserted in the aggregate at $163,323.43).

44.     The Debtor is in communication with each of those parties and will identify at or before

the hearing the subsection of section 363(f) on which it relies as to each. The Debtor does not contend that the aggregate asserted secured debt is less than the purchase price, and it does not rely on section 363(f)(3). The Debtor does not ask the Court to determine the validity, priority, or amount of any lien in connection with the sales.

45.    All liens, claims, encumbrances, and interests in the Acquired Assets will attach to the proceeds of the sale with the same validity, extent, and priority as they had against the Acquired Assets immediately prior to the sale, and the rights of all parties with respect to such proceeds are fully preserved.

**C.    THE ASSUMED CONTRACTS SHOULD BE ASSUMED AND ASSIGNED UNDER SECTION 365**

46.    Section 365(a) of the Bankruptcy Code permits a debtor in possession, subject to court approval, to assume an executory contract or unexpired lease, and section 365(f)(2) permits assignment of a contract so assumed. Assumption is governed by the business judgment standard. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993). Where a debtor assumes and assigns, it must cure existing defaults or provide adequate assurance of prompt cure, and must provide adequate assurance of the assignee's future performance. 11 U.S.C. § 365(b)(1), (f)(2).

47.    The agreements at the Locations are agreements permitting the Debtor to install, maintain, and operate laundry equipment in a designated room within a building, in exchange for a fixed payment or a share of revenue. They do not convey a possessory interest in real property, and the Debtor submits that they are licenses and service agreements rather than unexpired leases of nonresidential real property within the meaning of section 365(d)(4) of the Bankruptcy Code. To the extent any counterparty contends otherwise as to a particular agreement, the Debtor will

address that agreement separately and will seek such relief as may be appropriate.

48. The Debtor proposes the Cure Amounts set forth above and on Exhibit "C". The Cure Amounts will be paid by the Debtor at or promptly following the Closing. Any counterparty that disputes the proposed Cure Amount for its Assumed Contract may file an objection in accordance with the notice procedures set forth below, and any such dispute may be resolved after the Closing with the disputed amount reserved.

49. Adequate assurance of the Purchaser's future performance is established by the Purchaser's status as an operator of interior laundry room facilities, by its acquisition of the equipment and route records necessary to perform, and by the financial information the Purchaser will furnish to the Debtor and, on request and subject to appropriate confidentiality protections, to any counterparty to an Assumed Contract. The Debtor will supplement this showing in advance of the hearing. Moreover, subject to sections 365(b) and 365(c), any provision in an Assumed Contract that purports to restrict or condition assignment is rendered unenforceable by sections 365(f)(1) and (f)(3) of the Bankruptcy Code.

**D. THE REJECTION OF THE TWO REMAINING AGREEMENTS SHOULD BE AUTHORIZED**

50. The Debtor's decision to reject the building agreements at 301 East 79th Street and at 750/730 West Broadway is likewise governed by the business judgment standard. Cure at those two Locations would cost the estate $90,115, which exceeds the entire consideration payable under the Portfolio Agreement. The Debtor cannot fund it, and paying it would consume the value the sale is intended to produce for unsecured creditors. Rejection effective as of the Closing is the sound exercise of the Debtor's business judgment.

### E.    THE PURCHASER IS ENTITLED TO THE PROTECTIONS OF SECTION 363(m)

51.    Each Purchase Agreement was negotiated at arm's length and in good faith between parties with no prior relationship. The Purchaser is not an insider of the Debtor within the meaning of section 101(31) of the Bankruptcy Code, and there has been no collusion or fraud in connection with the sale. The Debtor accordingly requests a finding that the Purchaser is a good faith purchaser entitled to the protections afforded by section 363(m).

### F.    THE STAYS UNDER BANKRUPTCY RULES 6004(h) AND 6006(d) SHOULD BE WAIVED

52.    Bankruptcy Rules 6004(h) and 6006(d) provide that an order authorizing a sale or an assignment of an executory contract is stayed for fourteen days after entry unless the court orders otherwise. Given the September 8, 2026 deadline by which a plan must be confirmed in this case, and the necessity that the sale proceeds be available to fund distributions under that plan, cause exists to waive both stays so that the Closing may occur promptly following entry of the Sale Order.

## HIGHER AND BETTER OFFERS

53.    The Debtor acknowledges its fiduciary obligation to maximize value for the estate. The Debtor will consider any higher and better offer for the Acquired Assets received prior to the hearing on this Motion, and will present any such offer to the Court at the hearing.

54.    The Debtor discloses that each of the two letters of intent contained a provision under which the Debtor agreed not to market or negotiate a sale with any other party during the Purchaser's diligence period. The Debtor does not ask this Court to approve or enforce that provision, does not treat it as limiting the Court's consideration of any higher or better offer, and will bring any such offer before the Court. Neither Purchase Agreement contains a break-up fee,

expense reimbursement, or other bid protection binding upon the Debtor or its estate.

## NOTICE

55.    Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) the Subchapter V Trustee; (c) each counterparty to an Assumed Contract and to each agreement proposed to be rejected, and their respective counsel of record; (d) each party asserting a lien on or interest in the Acquired Assets; (e) all creditors and parties in interest listed on the Debtor's creditor matrix; (f) all taxing authorities; and (g) all parties having filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Notice is being provided in accordance with Bankruptcy Rules 2002(a)(2) and 6004(a), as those periods may be modified by an order of this Court shortening the notice period applicable to this Motion.

56.    No prior request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit "D",** granting the relief requested herein, together with such other and further relief as this Court deems just and proper.

Dated: Rockville Centre, New York
      July 29, 2026

    Respectfully submitted,
    Law Offices of Charles Wertman P.C.
    *By:  /s/ Charles Wertman*
    Charles Wertman, Esq.
    100 Merrick Road, Suite 304W
    Rockville Centre, New York 11570
    Tel: (516) 284-0900
    charles@cwertmanlaw.com
        Attorneys for the Debtor and
            Debtor in Possession