# EXHIBIT "B"

**ASSET PURCHASE AGREEMENT**
**Portfolio of Five Laundry Room Locations**

## ASSET PURCHASE AGREEMENT
**Portfolio Agreement**

This Asset Purchase Agreement (this **"Agreement"**) is made as of _____, 2026, by and between **METERED APPLIANCES INC.**, a New York corporation, debtor and debtor in possession in Case No. 25-73481 (JPM) pending in the United States Bankruptcy Court for the Eastern District of New York (the **"Seller"**), and **CPIL LLC**, a New York limited liability company (the **"Buyer"**).

### RECITALS

A.  On September 9, 2025, the Seller filed a voluntary petition for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). The Seller continues to operate its business as a debtor in possession.

B.  The Seller operates coin and card operated interior laundry room facilities in residential buildings pursuant to agreements with the owners of those buildings.

C.   The Buyer wishes to acquire, and the Seller wishes to sell, the Seller's laundry equipment and related assets at the locations identified herein, on the terms set forth below.

D.  This Agreement is subject in all respects to the approval of the Bankruptcy Court. The Seller shall have no obligation to consummate the transactions contemplated hereby absent entry of the Sale Order.

### ARTICLE 1.  PURCHASE AND SALE

**1.1   Locations.**  The "Locations" means (a) 150 Duncan Elder Drive; (b) 33-47 Floral Boulevard; (c) 4 North Lewis Place, Rockville Centre, New York; (d) 301 East 79th Street, New York, New York; (e) 750/730 West Broadway, Long Beach, New York.

**1.2   Acquired Assets.**  At the Closing the Seller shall sell, and the Buyer shall purchase, free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code, all of the Seller's right, title, and interest in and to the following assets at the Locations (the **"Acquired Assets"**): (a) all laundry equipment, including washers, dryers, and related fixtures and installations; (b) all card, coin, and payment systems, readers, kiosks, and associated hardware; (c) all route records, service histories, and customer data; and (d) all other tangible personal property of the Seller located at the Locations.

**1.3  Assumed Contracts; Cure.**  Subject to entry of the Sale Order, the Seller shall assume and assign to the Buyer, pursuant to sections 365(a) and 365(f) of the Bankruptcy Code, the building agreement at each of the following locations (the **"Assumed Contracts"**), and the Seller shall pay the cure amount set forth opposite each at or promptly following the Closing:

| Location | Cure amount |
|---|---|
| 150 Duncan Elder Drive | $6,000.00 |
| 33-47 Floral Boulevard | $5,300.00 |
| 4 North Lewis Place, Rockville Centre, New York | $5,300.00 |

The Seller shall be solely responsible for payment of the cure amounts. The Buyer assumes no cure obligation and no liability of the Seller arising on or before the Closing under any

1

Assumed Contract. From and after the Closing the Buyer shall perform all obligations arising under each Assumed Contract.

**1.4  Rejected Agreements.**  The Seller will move for authority to reject, effective as of the Closing, the building agreement at each of the following locations: (a) 301 East 79th Street, New York, New York; (b) 750/730 West Broadway, Long Beach, New York (the "Rejected Locations"). The Buyer acknowledges and agrees that: (a) it acquires no right, title, or interest under any agreement relating to a Rejected Location, and no right to occupy any premises at a Rejected Location; (b) the equipment at the Rejected Locations is sold to the Buyer as personal property only; (c) the owner of each building at a Rejected Location retains all rights it may have under applicable non-bankruptcy law with respect to the presence of that equipment on its premises; (d) the Buyer must negotiate its own arrangement with the owner of each such building, at its own risk and expense, if it wishes the equipment to remain in place; and (e) if no such arrangement is reached, the Buyer shall remove the equipment at its sole cost and expense, and neither the Seller nor its estate shall bear any cost of removal or have any liability arising from the Buyer's failure to remove.

The purchase price stated in Section 2.1 reflects the allocation of that risk to the Buyer, and the Buyer shall have no claim against the Seller or its estate, and no right of offset against the Note, arising from its inability to reach an arrangement at a Rejected Location.

The Buyer shall indemnify, defend, and hold harmless the Seller and its estate from and against any claim, cost, or liability of any kind asserted by the owner of a building at a Rejected Location and arising from the presence of the equipment at that location on or after the Closing, including any claim for use and occupancy, storage, or removal.

**1.5  No Assumed Liabilities.**  Except for obligations arising under the Assumed Contracts from and after the Closing, the Buyer assumes no liability or obligation of the Seller of any kind, whether known or unknown, fixed or contingent, including any liability arising before the Closing, any tax liability, any employee obligation, and any claim of any creditor of the Seller.

**1.6  As Is.**  Except as expressly set forth in Article 4, the Acquired Assets are sold AS IS, WHERE IS, and WITH ALL FAULTS, without representation or warranty of any kind, express or implied, including any warranty of merchantability or fitness for a particular purpose. The Buyer has inspected the Acquired Assets and relies on its own inspection.

## ARTICLE 2.  PURCHASE PRICE

**2.1  Purchase Price.**  The purchase price for the Acquired Assets is $100,000.00, payable as follows:

| Component | Amount |
|---|---|
| Cash at Closing | $20,000.00 |
| Payable forty-five days after Closing, subject to Section 2.3 | $5,000.00 |
| Secured promissory note | $75,000.00 |
| Total purchase price | $100,000.00 |

**2.2  The Note.**  The Buyer shall deliver at the Closing a secured promissory note in the principal amount of $75,000.00 (the **"Note"**), bearing interest at five percent (5%) per annum, payable in thirty-six (36) equal monthly installments of $2,247.82, the first due on the first day of the first full calendar month following the Closing. The Note shall be

secured by a first priority security interest in the Acquired Assets pursuant to a security agreement in form reasonably satisfactory to the Seller, and the Seller may file a financing statement to perfect that interest. The Note may be prepaid at any time without penalty.

**2.3 Income Verification Payment.**  The Buyer shall pay the Seller $5,000.00 on the forty-fifth day following the Closing, provided that the aggregate gross collections at the Locations for the forty-five day period following the Closing are not less than ninety percent (90%) of the aggregate gross collections at the Locations for the equivalent period disclosed by the Seller in diligence. If collections are less than that threshold, the payment shall be reduced proportionately, and no other adjustment to the purchase price, and no reduction of the Note, shall be made on that account. The Buyer shall provide the Seller with collection records for the measurement period within five business days after the end of that period.

**2.4 No Cross Default.**  This Agreement is separate from and independent of the other asset purchase agreement of even date between the Seller and the Buyer. Neither agreement is conditioned upon the other. A default under the note delivered under the other agreement shall not constitute a default under the Note delivered hereunder, and the failure of the transactions contemplated by the other agreement to close shall not excuse performance hereunder.

## ARTICLE 3.  CLOSING

**3.1  Closing.**  The closing of the transactions contemplated hereby (the "Closing") shall occur within five (5) business days after entry of an order of the Bankruptcy Court approving this Agreement (the "Sale Order"), or on such other date as the parties may agree.

**3.2  Conditions to Closing.**  The obligations of each party to close are subject to: (a) entry of the Sale Order, which shall have become effective and shall not have been stayed; (b) the accuracy in all material respects of the other party's representations and warranties; and (c) performance in all material respects of the other party's covenants.

**3.3  Deliveries at Closing.**  At the Closing the Seller shall deliver a bill of sale conveying the Acquired Assets, an assignment and assumption agreement as to the Assumed Contracts, and a copy of the Sale Order. The Buyer shall deliver the cash portion of the purchase price, the executed Note, and the executed security agreement.

**3.4  Risk of Loss.**  Risk of loss with respect to the Acquired Assets passes to the Buyer at the Closing.

## ARTICLE 4.  REPRESENTATIONS AND WARRANTIES

**4.1  Of the Seller.**  The Seller represents that, subject to entry of the Sale Order, it has the power and authority to enter into and perform this Agreement, and that it owns the Acquired Assets. The Seller makes no other representation or warranty of any kind.

**4.2  Of the Buyer.**  The Buyer represents that it is duly organized and in good standing under the laws of the State of New York, that it has the power and authority to enter into and perform this Agreement, that it has the financial capacity to perform its obligations hereunder, and that it has conducted its own inspection of the Acquired Assets and of the Locations.

**4.3  Adequate Assurance.**  The Buyer shall provide, promptly on request, such financial and operating information as the Seller reasonably requires in order to demonstrate adequate assurance of future performance under section 365(f)(2) of the Bankruptcy Code,

and consents to the provision of that information to any counterparty to an Assumed Contract and to the Bankruptcy Court, subject to appropriate confidentiality protections.

## ARTICLE 5.  COVENANTS

**5.1  Bankruptcy Court Approval.**  The Seller shall use commercially reasonable efforts to obtain entry of the Sale Order. The Buyer shall cooperate and shall provide such information and testimony as the Seller reasonably requires in connection therewith.

**5.2  Higher and Better Offers.**  The Buyer acknowledges that the Seller is a debtor in possession with fiduciary obligations to its estate, that this Agreement is subject to higher and better offers, and that the Seller may and shall present any such offer to the Bankruptcy Court. The Buyer shall have no claim against the Seller or its estate, and no right to any break-up fee, expense reimbursement, or other bid protection, if the Bankruptcy Court approves a sale to another party.

**5.3  Operation Pending Closing.**  Between the date hereof and the Closing the Seller shall operate at the Locations in the ordinary course and shall remain current on its ordinary course obligations there.

**5.4  Further Assurances.**  Each party shall execute such further documents and take such further actions as are reasonably necessary to effect the transactions contemplated hereby.

## ARTICLE 6.  MISCELLANEOUS

**6.1  Governing Law; Jurisdiction.**  This Agreement is governed by the laws of the State of New York without regard to its conflicts principles. The parties consent to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute arising hereunder.

**6.2  Entire Agreement.**  This Agreement, together with the Note, the security agreement, and the bill of sale, constitutes the entire agreement between the parties as to its subject matter and supersedes all prior agreements and understandings, including the letter of intent between the parties, which is superseded in its entirety.

**6.3  Amendment.**  This Agreement may be amended only by a writing signed by both parties, and no amendment that materially affects the estate shall be effective without further order of the Bankruptcy Court.

**6.4  Assignment.**  The Buyer may assign this Agreement to an entity under common control with the Buyer upon written notice to the Seller, provided that no such assignment relieves the Buyer of its obligations hereunder or of its obligation to provide adequate assurance of future performance.

**6.5  Notices.**  Notices shall be in writing and delivered by hand, by overnight courier, or by electronic mail with confirmation, to the addresses set forth beneath the parties' signatures.

**6.6  Counterparts.**  This Agreement may be executed in counterparts and by electronic signature, each of which is an original and all of which together constitute one instrument.

**6.7  No Third Party Beneficiaries.**  Nothing herein confers any right on any person other than the parties and their permitted assigns.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

SELLER:

4

METERED APPLIANCES INC.

By: _____
Name:
Title:

BUYER:
CPIL LLC

By: _____
Name:
Title: