UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                                    Chapter 11
                                                          Subchapter V
    METERED APPLIANCES INC.,                  Case No. 25-73481 (JPM)

    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SECOND AMENDED SUBCHAPTER V PLAN OF REORGANIZATION
Dated: July 29, 2026

> **THIS PLAN AMENDS AND SUPERSEDES THE FIRST AMENDED SUBCHAPTER V PLAN DATED APRIL 16, 2026 [ECF NOS. 52, 53]. THE DEBTOR IS SEEKING CONFIRMATION ON OR BEFORE SEPTEMBER 8, 2026 PURSUANT TO THIS COURT'S ORDER ENTERED MAY 15, 2026 [ECF NO. 58].**

## INTRODUCTION

1.      Metered Appliances Inc., the debtor and debtor in possession herein (the **"Debtor"**), proposes this Second Amended Subchapter V Plan of Reorganization (the **"Plan"**) pursuant to subchapter V of chapter 11 of title 11 of the United States Code (the **"Bankruptcy Code"**). This Plan amends and supersedes the First Amended Subchapter V Plan dated April 16, 2026 [ECF Nos. 52, 53].

2.      This Plan is accompanied by the liquidation analysis required by section 1190(1)(B) of the Bankruptcy Code, annexed as **Exhibit A**, and the projections of the Debtor's ability to make payments required by section 1190(1)(C), annexed as **Exhibit B**. The absence of those items from the prior plan was the basis of one of the grounds asserted by the United States Trustee in its motion to convert or dismiss [ECF No. 21], as supplemented [ECF No. 70].

3.      The Plan is funded from two sources: (a) the net proceeds of the sale of six of the Debtor's laundry room operations to CPIL LLC for $117,500.00, which is the subject of a motion filed under sections 363 and 365 of the Bankruptcy Code; and (b) the Debtor's projected disposable income from the laundry room operations it retains.

4.  **CREDITORS SHOULD READ THIS PLAN CAREFULLY.** Your rights may be affected. The Plan describes how each class of claims will be treated, and whether and when you will be paid. If you are entitled to vote, a ballot accompanies this Plan.

## THE DIFFICULTIES IN FORMULATING THIS PLAN

5.  The Debtor sets out below the difficulties it encountered in formulating this Plan. It does so because a plan that presents itself as certain, when the case is not yet certain, is of no use to the Court or to creditors, and because several of these matters remain open and the Court is entitled to know which ones.

6.  **The Debtor could not fix the terms of a plan until it knew which locations it would keep.** The Debtor operates in approximately 117 buildings under agreements with the owners of those buildings. It determined that a substantial number of those locations could not be serviced profitably, in several instances because the payment due to the building approaches or equals the revenue the location generates. Which locations the Debtor would retain, and therefore what income would be available to fund a plan, depended on which locations a purchaser would take. That determination was not the Debtor's to make. The Purchaser is an operator rather than a financial buyer and was unwilling to commit to any location it had not inspected. It visited each location, assessed the equipment and the economics, and fixed on six. The Debtor had hoped for more.

7.  **Until the locations were fixed, the cure obligations could not be calculated.** Section 365(b)(1) of the Bankruptcy Code conditions assumption on cure of all defaults. When the Debtor reconciled the arrears at the six locations under contract, they came to approximately $106,715 against combined consideration of $117,500. Assuming all six agreements would have consumed substantially the entire purchase price, left the estate roughly $10,000, and paid two building owners in full in cash ahead of every other creditor. The Debtor restructured the transaction rather than propose that. It will assume and assign the four agreements whose arrears total $16,600 and reject the two whose arrears total

$90,115. That change was not available to the Debtor until the diligence was complete, and it is the single largest reason this Plan differs from the one it replaces.

8.    **The distribution percentage in the prior plan is not supported by the arithmetic.** The First Amended Plan committed to a distribution of not less than thirty-two percent to general unsecured creditors. Filed general unsecured Claims total $600,377.37, so that commitment is $192,120.76. The combined consideration from both sale agreements is $117,500, or 19.6 percent of the pool, before any administrative expense, any cure, and any payment to secured or priority creditors. The Debtor does not believe the thirty-two percent figure can be supported and does not repeat it. This Plan commits the Debtor to distribute a defined fund rather than to achieve a percentage.

9.    **The size of the general unsecured class is not yet known.** The Debtor is exiting a substantial number of locations in addition to the six being sold. Rejection of those agreements will give each counterparty a claim under section 502(g) of the Bankruptcy Code. Those claims are not on the claims register today. They will enlarge Class 5 and reduce the percentage that any given fund produces. The Debtor discloses this rather than leave it to be discovered at confirmation, and requests that the Court fix a bar date for rejection damage claims so that the class can be quantified before this Plan is confirmed.

10.    **The largest secured claim is disputed and was filed late.** Eastern Funding LLC is scheduled in fifteen separate obligations aggregating $430,590.77, each scheduled as disputed. It filed a single proof of claim asserting a round $500,000.00 on February 7, 2026, thirty-eight days after the December 31, 2025 bar date, without allocating that sum among the obligations scheduled or reconciling it to the twenty promissory notes annexed to the claim. The Debtor will object. The outcome of that objection is the single largest determinant of what this Plan must pay, and until it is resolved the Debtor cannot state with precision what Class 5 will receive.

11.    **The equipment is worth a great deal installed and very little removed.** The Debtor's records carry its laundry equipment at $2,645,085 on a forty percent used basis

and at $1,719,305 on a currently installed basis. Those figures assume machines that remain plumbed, vented, wired, and generating revenue on a functioning route. Removed from the buildings they occupy, and sold into a wholesale market after the cost of removal, the same equipment realizes a fraction of that. Both propositions are true at once, and they pull in opposite directions. The first is why the liquidation analysis annexed as Exhibit A concludes that a chapter 7 would produce nothing for general unsecured creditors. The second is why the amount at which the secured Claims must be valued under section 506(a) of the Bankruptcy Code is a genuinely contested question rather than an arithmetic one.

12.      **A three year payout of the secured debt is not achievable.** The Claims asserted as secured in this case, including the secured portion of the Claim of the Internal Revenue Service, aggregate approximately $767,500 as filed. Amortized over three years those Claims alone would require payments the Debtor's operations cannot produce. This Plan therefore proposes to amortize the Allowed Secured Claims over a term matched to the remaining useful life of the equipment securing them rather than over the Commitment Period, which is permitted because only priority tax Claims are confined to five years under section 1129(a)(9)(C) of the Bankruptcy Code. The Debtor is also evaluating whether to surrender to the holders of secured Claims the equipment at the locations it is exiting, in partial satisfaction of those Claims. Surrender would reduce the amounts payable under this Plan and would enlarge Class 5 by the resulting deficiency. That is a trade rather than a free improvement, and the Debtor will disclose its determination before confirmation rather than make it silently.

13.      **What has not changed.** The Debtor's cash position has improved over the period covered by its operating reports, from $26,631.26 at March 1, 2026 to $53,325.13 at June 30, 2026. Its ordinary course obligations, including all rent due to building owners, are current. The Debtor is not asking for additional time and does not seek any extension of the September 8, 2026 confirmation deadline fixed by this Court.

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

**1.1**  Definitions. Capitalized terms used herein have the meanings set forth below. Terms not defined herein have the meanings given in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

**"Administrative Claim"**  means a Claim for costs and expenses of administration of the Estate allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including compensation of Professionals and fees payable under 28 U.S.C. § 1930.

**"Allowed Claim"**  means a Claim (a) as to which a proof of claim was timely filed or deemed filed and to which no objection has been made, or (b) that has been allowed by Final Order.

**"Assumed Contracts"**  means the executory contracts and unexpired leases assumed and assigned to the Purchaser pursuant to the Sale Order, as identified on Schedule 1 to the Sale Motion.

**"Confirmation Date"**  means the date on which the Confirmation Order is entered.

**"Cure Costs"**  means the amounts required to be paid under section 365(b)(1) of the Bankruptcy Code to cure defaults under the Assumed Contracts, as fixed by the Sale Order.

**"Disposable Income"**  means income received by the Debtor that is not reasonably necessary for the maintenance or support of the Debtor or for the payment of expenditures necessary for the continuation, preservation, or operation of the Debtor's business, within the meaning of section 1191(d) of the Bankruptcy Code.

**"Effective Date"**  means the first business day that is fourteen (14) days after the Confirmation Date, provided no stay of the Confirmation Order is then in effect.

**"Purchaser"**  means CPIL LLC, a New York limited liability company.

**"Reorganized Debtor"**  means the Debtor on and after the Effective Date.

**"Retained Routes"**  means all laundry room locations, leases, licenses, and building agreements of the Debtor other than the Assumed Contracts, together with the equipment located thereat.

**"Sale"**  means the sale of the Debtor's laundry equipment and related assets at six laundry room locations to the Purchaser for $117,500.00, pursuant to the Sale Order.

**"Sale Order"**  means the order of the Bankruptcy Court authorizing the Sale pursuant to sections 363 and 365 of the Bankruptcy Code.

**"Seller Note"**  means the secured promissory note in the original principal amount of $87,500.00 delivered by the Purchaser at the closing of the Sale, bearing interest at 5.0% per annum and payable in thirty-six monthly installments of $2,622.46, being $374.64 under the Brooklyn note and $2,247.82 under the Portfolio note.

**"Subchapter V Trustee"**  means Salvatore LaMonica, Esq., the trustee appointed under section 1183 of the Bankruptcy Code.

**1.2**  Rules of Construction. The rules of construction in section 102 of the Bankruptcy Code apply. Headings are for convenience only. References to Articles and Sections are to those of this Plan unless otherwise stated.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1**   Administrative Claims. Except to the extent that a holder agrees to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of the Effective Date and the date such Claim becomes Allowed, or on such other terms as may be agreed. Professionals shall file final fee applications no later than thirty (30) days after the Effective Date.

**2.2**   Subchapter V Trustee Fees. The fees and expenses of the Subchapter V Trustee allowed under sections 330 and 503(b) of the Bankruptcy Code shall be paid in full in Cash on the Effective Date or as otherwise agreed.

**2.3**   United States Trustee Fees. All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter as they accrue until the case is closed, converted, or dismissed.

**2.4**   Priority Tax Claims. Each holder of an Allowed Priority Tax Claim under section 507(a)(8) shall receive deferred cash payments, in equal quarterly installments, over a period ending not later than five years after the order for relief, with interest at the rate determined under section 511, in accordance with section 1129(a)(9)(C). The Debtor's scheduled and filed Priority Tax Claims total **$415.16**, consisting of the priority portion of the claim of the Internal Revenue Service (Claim No. 9, $307.90) and the claim of the New York State Department of Labor (Claim No. 1, $107.26). The Debtor anticipates paying these Claims in full in Cash on the Effective Date.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**3.1**   Summary of Classification. Claims and Interests are classified as follows:

| Class | Description | Amount | Status |
|---|---|---|---|
| 1 | Secured claim of Eastern Funding LLC (Cl. 18) | $500,000.00 | Impaired |
| 2 | Secured claims of Clean Laundry | $163,323.43 | Impaired |

|   | Funding (Cl. 10, 11, 12) | | |
|---|---|---|---|
| 3 | Secured claim of the Internal Revenue Service (Cl. 9) | $104,179.13 | Impaired |
| 4 | Other secured claims | None identified to date | Impaired |
| 5 | General unsecured claims | $600,377.37 | Impaired |
| 6 | Equity interests | Not applicable | Impaired |

**3.2**  Class 1, Secured Claim of Eastern Funding LLC. Eastern Funding LLC filed Claim No. 18 on February 7, 2026 asserting a Claim of $500,000.00, stated to be fully secured by laundry equipment. The Debtor disputes the Claim as to timeliness, amount, and the extent to which it is secured, and will object to it. Subject to the resolution of that objection, the Claim shall be bifurcated under section 506(a) of the Bankruptcy Code into (a) an Allowed Secured Claim equal to the value of the collateral securing it as of the Effective Date and (b) an Allowed General Unsecured Claim in the amount of the balance, which shall be treated in Class 5.

**3.2.1**  Treatment of the Class 1 Allowed Secured Claim. The holder shall retain its lien on its collateral until the Allowed Secured Claim is paid in full, and shall receive deferred Cash payments in equal monthly installments, commencing on the first day of the first full month after the Effective Date and continuing for eighty-four (84) months, in a total amount having a present value as of the Effective Date equal to the Allowed Secured Claim, together with interest at a rate to be fixed by the Bankruptcy Court. The Debtor proposes a rate equal to the national prime rate in effect on the Confirmation Date plus two percent (2%). The term of eighty-four months is proposed because it approximates the remaining useful life of the equipment securing the Claim; only Priority Tax Claims are confined to five years under section 1129(a)(9)(C) of the Bankruptcy Code. Any portion of the proceeds of the Sale attributable to collateral securing this Claim shall be applied to reduce it.

**3.3**  Class 2, Secured Claims of Clean Laundry Funding. Clean Laundry Funding filed Claim Nos. 10, 11, and 12, asserting Claims of $88,915.33, $45,420.51, and $28,987.59 respectively, each stated to be fully secured. Each such Claim shall be bifurcated under section 506(a) of the Bankruptcy Code by reference to the value of the specific equipment securing it, and each Allowed Secured Claim shall receive the treatment set forth in Section 3.2.1 as though separately stated therein. Each deficiency shall be treated in Class 5. Because each Claim is secured by identified equipment under a separate financing agreement, each is valued separately and no Claim is secured by collateral securing another.

**3.3.1**  Valuation Procedure. The Debtor shall file a motion under Rule 3012 of the Federal Rules of Bankruptcy Procedure and section 506(a) of the Bankruptcy Code to determine the value of the collateral securing each Claim in Classes 1, 2, and 4, and shall do so not later than fourteen (14) days before the Confirmation Hearing. Value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of the collateral. The Debtor may, in lieu of the treatment set forth in Section 3.2.1 and upon notice to the affected holder, surrender to the holder the equipment at any location the Debtor is exiting, in partial satisfaction of the Allowed Secured Claim secured by that equipment, in which event the resulting deficiency shall be treated in Class 5.

**3.4**  Class 3, Secured Claim of the Internal Revenue Service. The Internal Revenue Service filed Claim No. 9 in the amount of $104,487.03, of which $307.90 is asserted as priority and $104,179.13 as secured. The Allowed Secured Claim shall be paid in deferred cash payments with interest at the rate determined under section 511 of the Bankruptcy Code, over a period ending not later than five years after the order for relief.

**3.5**  Class 4, Other Secured Claims. Each holder of an Allowed Other Secured Claim shall, at the Debtor's election, (a) retain its lien and receive deferred cash payments equal to the

value of its collateral, (b) receive the collateral securing such Claim, or (c) receive such other treatment as renders the Claim unimpaired.

**3.6** Class 5, General Unsecured Claims. Class 5 consists of all Allowed general unsecured Claims, including the deficiency claims of holders of Claims in Classes 1 through 4 and any Claim arising from the rejection of an executory contract or unexpired lease. Filed general unsecured Claims total **$600,377.37**. Each holder of an Allowed Class 5 Claim shall receive its pro rata share of the Plan Fund, in quarterly distributions commencing on the first distribution date following the Effective Date and continuing through the end of the Commitment Period.

**3.6.1** The Plan Fund. The Plan Fund consists of (a) the proceeds of the Sale remaining after payment of Cure Costs, Allowed Administrative Claims, Allowed Priority Claims, and the Allowed Secured Claims in Classes 1 through 4, and (b) all of the Debtor's projected Disposable Income for the Commitment Period. The sources of the Plan Fund, and the Debtor's estimate of the amount available for distribution to Class 5, are set forth in the projections annexed as **Exhibit B**. The amount ultimately distributed to Class 5 depends upon the Allowed amount of the Claims in Classes 1 through 4, upon the value of the collateral securing those Claims as determined under section 506(a) of the Bankruptcy Code, and upon the amount of Allowed Administrative Claims. The Debtor does not guarantee any particular percentage recovery. Its obligation under this Plan is to distribute the Plan Fund as provided herein.

**3.6.2** Composition of Class 5. The Debtor discloses that approximately $474,911.73, or seventy-nine percent, of the filed Class 5 pool consists of Claims filed by building owners and route counterparties, namely Arverne Limited-Profit Housing ($181,800.00), Aces Laundry Service II ($100,000.00), 67-30 Dartmouth Street Owners ($70,008.93), Barbizon Owners ($48,000.00), 8300 Talbot St. Owners ($40,100.00), 84 Drive Homes

($24,765.84), and Whitman Village Housing ($10,236.96). The treatment of each such Claim depends on the disposition of the agreement to which it relates. Where the Debtor assumes the agreement, the Claim is satisfied through the Cure Cost paid under section 365(b)(1) of the Bankruptcy Code rather than through a Class 5 distribution. Where the Debtor rejects, the Claim remains in Class 5. The Debtor is reconciling each Claim against the agreement to which it relates, and will file a schedule of that reconciliation not later than fourteen days before the Confirmation Hearing.

**3.7**  Class 6, Equity Interests. Holders of Interests shall retain their Interests, subject to Article VI.

## ARTICLE IV
## MEANS OF IMPLEMENTATION

**4.1**  Sources of Funding. The Plan shall be funded from: (a) the Cash portion of the purchase price under the Sale, in the amount of $25,000.00, payable at closing; (b) the further $5,000.00 payable forty-five days after closing under the Portfolio Agreement, subject to verification of the income at the Locations sold; (c) the payments due under the Seller Note, in the amount of $2,622.46 per month for thirty-six months, aggregating $94,408.56; and (d) the Debtor's Disposable Income from the Retained Routes over the Commitment Period.

| Source | Amount | Timing |
|---|---|---|
| Cash at closing under the Sale | $25,000.00 | On or about the Effective Date |
| Payment at forty-five days | $5,000.00 | 45 days after closing |
| Seller Note payments | $94,408.56 | 36 monthly installments |
| Less: Cure Costs | $16,600.00 | At or promptly after closing |
| Less: Allowed Administrative Claims | To be fixed on application | Effective Date |
| Less: Allowed Secured Claims, Classes 1-4 | To be fixed on allowance | Over the Commitment Period |
| Plus: Disposable Income, Retained | $240,244.92 | Over the Commitment |

| Routes | | Period |
|---|---|---|
| Net available to Class 5 | Residual | |

**4.2** The Sale. The Debtor has moved for authority to sell its laundry equipment and related assets at six laundry room locations to the Purchaser, and to assume and assign the Assumed Contracts, free and clear of liens, claims, encumbrances, and interests pursuant to sections 363(f) and 365 of the Bankruptcy Code. Consummation of the Sale is a condition to the Effective Date. Liens on the assets sold attach to the proceeds with the same validity, extent, and priority.

**4.3** Continued Operations. On and after the Effective Date, the Reorganized Debtor shall continue to operate the Retained Routes and shall devote its Disposable Income to Plan payments as provided herein.

**4.4** The Seller Note. The Seller Note, together with the security interest and guaranty securing it, shall vest in the Reorganized Debtor on the Effective Date. The Reorganized Debtor shall hold and collect the Seller Note and shall apply the proceeds thereof in accordance with this Plan. **The Bankruptcy Court shall retain jurisdiction to enforce the Seller Note, the related security agreement, and the guaranty notwithstanding the closing of this case.** The Reorganized Debtor shall not compromise, discount, or assign the Seller Note without further order of the Bankruptcy Court.

**4.5** Disbursing Agent. The Reorganized Debtor shall serve as disbursing agent under the Plan and shall make all distributions required hereunder without bond or other security.

**4.6** Corporate Action. On the Effective Date, the Debtor's existing management shall continue in office, and all actions contemplated by this Plan shall be deemed authorized without further corporate action.

**4.7**  Distributions. If this Plan is confirmed under section 1191(a) of the Bankruptcy Code, the Reorganized Debtor shall make all distributions required hereunder, and the services of the Subchapter V Trustee shall terminate upon substantial consummation as provided in section 1183(c)(1). If this Plan is confirmed under section 1191(b), the Subchapter V Trustee shall make the payments to holders of Claims as provided in section 1194(b), and the Reorganized Debtor shall remit to him the amounts required to be distributed as and when they come due. The Cure Costs shall be paid by the Reorganized Debtor directly to the counterparties to the Assumed Contracts.

**4.8**  Compensation of the Subchapter V Trustee. The fees and expenses of the Subchapter V Trustee allowed under sections 330 and 503(b) of the Bankruptcy Code shall be paid by the Reorganized Debtor.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1**  Assumption and Assignment Through the Sale. Pursuant to the Sale Order and sections 365(a) and 365(f) of the Bankruptcy Code, the Debtor assumes and assigns to the Purchaser the building agreements at the four locations set forth below, and shall pay the Cure Cost set forth opposite each at or promptly following the closing of the Sale. The Debtor will cure in full every agreement it assumes, and proposes to assume no agreement it cannot cure.

| Location | Treatment | Cure Cost |
|---|---|---|
| 2020 East 41st Street, Brooklyn | Assume and assign | $0.00 |
| 150 Duncan Elder Drive | Assume and assign | $6,000.00 |
| 33-47 Floral Boulevard | Assume and assign | $5,300.00 |
| 4 North Lewis Place | Assume and assign | $5,300.00 |
| Total Cure Costs payable by the Debtor | | $16,600.00 |

**5.1.1**  Agreements Rejected in Connection with the Sale. The building agreements at 301 East 79th Street, New York, New York and at 750/730 West Broadway, Long Beach, New York are rejected pursuant to the Sale Order, effective as of the closing of the Sale. The

arrears at those two locations, $39,580.00 and $50,535.00 respectively, are not cured. Those amounts, together with any Claim for damages arising from rejection, are general unsecured Claims in Class 5. The Debtor rejected those two agreements because curing them would have cost the estate $90,115, which exceeds the entire consideration payable under the Portfolio Agreement and would have consumed the value the Sale is intended to produce for unsecured creditors.

**5.2** Assumption of Retained Routes. Except as otherwise provided herein or in the Sale Order, all executory contracts and unexpired leases relating to the Retained Routes are assumed as of the Effective Date, and any defaults thereunder shall be cured as set forth on **Exhibit C**.

**5.3** Rejection. The following executory contracts and unexpired leases are rejected: (a) the two building agreements identified in Section 5.1.1, effective as of the closing of the Sale; (b) each agreement identified on the schedule annexed to the Debtor's motion to reject filed at ECF No. 40, as that schedule is amended to remove 4 North Lewis Place, effective as of the date fixed by the order granting that motion; and (c) every other executory contract and unexpired lease of the Debtor that is not assumed under Section 5.1 or Section 5.2 and that has not previously been rejected, effective as of the Effective Date. The Debtor shall file a schedule identifying each agreement in category (c) not later than fourteen (14) days before the Confirmation Hearing.

**5.4** Rejection Damage Claims. Any Claim arising from the rejection of an executory contract or unexpired lease under this Plan must be filed within thirty (30) days after the Effective Date or be forever barred. Timely filed rejection damage Claims shall be treated in Class 5.

**5.5** Nature of the Building Agreements. The building agreements permit the Debtor to install, maintain, and operate laundry equipment in a designated room within a building, in

exchange for a fixed payment or a share of revenue. They do not convey a possessory interest in real property. The Debtor submits that they are licenses and service agreements rather than unexpired leases of nonresidential real property within the meaning of section 365(d)(4) of the Bankruptcy Code, and that section 365(d)(4) therefore does not apply to them. To the extent any counterparty contends otherwise as to a particular agreement, the Debtor will address that agreement separately and will seek such relief as may be appropriate.

**5.6**  Cure of the Retained Route Agreements. The Debtor shall cure any post-petition default under each agreement relating to a Retained Route that is assumed under Section 5.2, in the amount set forth on **Exhibit C**, within thirty (30) days after the Effective Date or on such other terms as the Debtor and the counterparty agree. The Debtor shall file the completed **Exhibit C** not later than fourteen (14) days before the Confirmation Hearing, and shall serve it upon each counterparty identified thereon. A counterparty that disputes the amount stated for its agreement may file an objection to confirmation, and any such dispute may be resolved after the Effective Date with the disputed amount reserved.

**5.7**  Locations Being Exited; Disposition of Equipment. The Debtor is exiting a number of laundry room locations, in addition to the six addressed by the Sale, that it has determined it cannot service profitably. The agreements at those locations are rejected under Section 5.3 or pursuant to the Debtor's pending motion at ECF No. 40. The laundry equipment installed at those locations has value, and that value depends upon the machines remaining installed and in service rather than being removed. Before abandoning any such equipment, the Debtor shall offer it for sale to the owner of the building in which it is located and to successor operators, subject to the liens asserted against it and to any further order of the Bankruptcy Court, and shall report the results to the Bankruptcy Court before the Confirmation Hearing. A building owner wishing to acquire the equipment serving its own laundry room should contact counsel to the Debtor.

**5.8**  Treatment of Building Owner Claims. The Claim of a counterparty whose agreement is assumed, whether through the Sale or under Section 5.2, is satisfied by payment of the Cure Cost applicable to that agreement and is not entitled to a distribution from the Plan Fund on account of any amount so cured. The Claim of a counterparty whose agreement is rejected, including any Claim for damages arising from rejection, is a general unsecured Claim in Class 5 and shares ratably with the other Claims in that Class. No building owner is subordinated to, or preferred over, any other creditor by reason of this Plan; the difference in treatment follows from section 365(b)(1) of the Bankruptcy Code, which makes cure a condition of assumption.

### ARTICLE VI
### CONFIRMATION

**6.1**  Consensual Confirmation. The Debtor will seek confirmation under section 1191(a) of the Bankruptcy Code if all impaired classes accept the Plan. In that event, the Debtor shall receive a discharge under section 1141(d)(1)(A) upon confirmation, and distributions shall be made by the Reorganized Debtor.

**6.2**  Nonconsensual Confirmation. If any impaired class rejects the Plan, the Debtor will request confirmation under section 1191(b). In that event the Plan does not discriminate unfairly and is fair and equitable with respect to each rejecting class, and the Debtor commits all of its projected Disposable Income for the Commitment Period to Plan payments, as required by section 1191(c)(2). Discharge shall occur under section 1192 upon completion of all payments due within the Commitment Period.

**6.3**  Commitment Period. The **"Commitment Period"** means the three (3) year period commencing on the date the first payment is due under this Plan.

**6.4**  Best Interests of Creditors. As set forth in the liquidation analysis annexed as **Exhibit A**, each holder of a Claim will receive under this Plan not less than it would receive if the

Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code, as required by section 1129(a)(7), made applicable by section 1191(a).

**6.5**  Feasibility. Section 1129(a)(11) of the Bankruptcy Code requires that confirmation not be likely to be followed by liquidation or the need for further financial reorganization, unless such liquidation or reorganization is proposed in this Plan. The Debtor submits that the requirement is satisfied.

**6.5.1**  The Sources of Payment Are Identified and Largely Fixed. Three of the four sources of the Plan Fund are contractual rather than projected. The Sale produces $25,000.00 in Cash at closing and a further $5,000.00 forty-five days later, and the two Seller Notes produce $2,622.46 per month for thirty-six months, or $94,408.56 in the aggregate, secured by a first priority lien on the assets sold. Those obligations do not depend on the Debtor's future performance. Only the fourth source, the Debtor's Disposable Income from the Retained Routes, depends on operations.

**6.5.2**  The Operating Projection Rests on Reported Results. The projections annexed as **Exhibit B** assume net operating cash flow equal to the average the Debtor actually reported over the four months for which operating reports have been filed since March 2026, being $6,673.47 per month. Over those four months the Debtor reported aggregate cash receipts of $390,375.97, aggregate cash disbursements of $363,682.10, and an increase in Cash on hand from $26,631.26 at March 1, 2026 to $53,325.13 at June 30, 2026. The Debtor has projected no improvement on account of the locations it is exiting, although those locations were identified for exit because the payment due to the building approaches or equals the revenue the location generates. The projection is therefore conservative.

**6.5.3**  The Principal Uncertainty Is the Amount of the Secured Claims, Not the Debtor's Ability to Pay. The Debtor does not conceal the difficulty. If the Claims in Classes 1 through 4 are Allowed as filed and are fully secured, the amounts required to satisfy them

exceed the sources set forth in **Exhibit B**. The Debtor does not believe that is the correct outcome, for three reasons. The Eastern Funding Claim was filed thirty-eight days after the bar date as to obligations every one of which was scheduled as disputed, and the Debtor will object to it. Each secured Claim is limited by section 506(a) of the Bankruptcy Code to the value of the collateral securing it, and the Debtor will move under Rule 3012 to determine that value. And the Debtor may surrender the equipment at the locations it is exiting in partial satisfaction of the Claims secured by that equipment, which would reduce the amounts payable under this Plan.

**6.5.4** Feasibility Is Determined at Confirmation on a Developed Record. The Debtor will file the Rule 3012 valuation motion, its objection to the Eastern Funding Claim, amended projections, and the schedules referred to in Sections 3.6.2, 5.3, and 5.6 not later than fourteen (14) days before the Confirmation Hearing. Section 1129(a)(11) does not require certainty. It requires that confirmation not be likely to be followed by liquidation or further reorganization, and the Debtor submits that on the record as it will then stand that standard is met.

**6.6** Conditions Precedent to the Effective Date. The Effective Date shall not occur unless and until each of the following has been satisfied or waived as provided below: (a) the Confirmation Order has been entered and is not subject to any stay; (b) the Sale Order has been entered, is not subject to any stay, and the Closing has occurred; (c) all documents and agreements necessary to implement this Plan have been executed and delivered; and (d) the Debtor holds Cash sufficient to make the payments required to be made on the Effective Date.

**6.7** Waiver of Conditions. The Debtor may waive the condition set forth in clause (c) or clause (d) of Section 6.4 without further order of the Bankruptcy Court, provided that no

waiver shall reduce the amount to be distributed to any Class. The conditions set forth in clauses (a) and (b) may not be waived.

**6.8** Notice of Effective Date. Within five (5) business days after the Effective Date the Reorganized Debtor shall file a notice of the occurrence of the Effective Date and shall serve that notice upon the Office of the United States Trustee, the Subchapter V Trustee, and all holders of Claims and Interests.

**6.9** Non-Occurrence of the Effective Date. If the Effective Date has not occurred within ninety (90) days after the Confirmation Date, the Debtor shall so advise the Bankruptcy Court and shall request such relief as may then be appropriate, including modification of this Plan under section 1193 of the Bankruptcy Code.

**ARTICLE VII**
**EFFECT OF CONFIRMATION**

**7.1** Vesting. On the Effective Date, all property of the Estate shall vest in the Reorganized Debtor free and clear of all Claims, liens, and Interests except as provided in this Plan or the Confirmation Order.

**7.2** Discharge. If the Plan is confirmed under section 1191(a), the Debtor shall be discharged as provided in section 1141(d)(1)(A) on the Confirmation Date. If confirmed under section 1191(b), discharge shall occur as provided in section 1192 upon completion of all payments due within the Commitment Period.

**7.3** Preservation of Causes of Action. All Claims and causes of action of the Debtor and the Estate, including all avoidance actions under chapter 5 of the Bankruptcy Code, are preserved and retained by the Reorganized Debtor and are expressly excluded from the assets sold under the Sale.

**7.4**  Injunction. Except as otherwise expressly provided in this Plan or in the Confirmation Order, on and after the Effective Date all holders of Claims that are discharged, released, or otherwise dealt with under this Plan are permanently enjoined from commencing or continuing any action, employing any process, or performing any act to collect, recover, or offset any such Claim against the Debtor, the Reorganized Debtor, or property of either, other than as provided in this Plan. This injunction extends only to Claims against the Debtor and the Reorganized Debtor. Nothing in this Plan enjoins, releases, or otherwise impairs any claim or cause of action of any holder of a Claim against any person or entity other than the Debtor and the Reorganized Debtor.

**7.5**  Exculpation. None of the Debtor, the Reorganized Debtor, the Subchapter V Trustee, or any of their respective officers, directors, employees, attorneys, accountants, or other professionals retained in this case, in each case acting in that capacity, shall have or incur any liability to any holder of a Claim or Interest for any act taken or omitted to be taken on or after the Petition Date in connection with the administration of this case, the formulation, negotiation, or confirmation of this Plan, the Sale, or the consummation of this Plan, except for liability arising from gross negligence, willful misconduct, or actual fraud as determined by a Final Order. This exculpation does not extend to any act or omission occurring before the Petition Date, does not release any obligation arising under this Plan or the Confirmation Order, and does not limit the obligations of any professional under sections 328, 330, or 331 of the Bankruptcy Code.

**7.6**  No Third Party Releases. This Plan does not release, discharge, enjoin, or otherwise affect any claim or cause of action held by any person or entity against any party other than the Debtor and the Reorganized Debtor. No holder of a Claim is required by this Plan to grant any release to any non-debtor, and confirmation of this Plan does not operate as such a release.

**7.7**  United States Trustee Fees and Post-Confirmation Reports. The Reorganized Debtor shall pay all fees payable under 28 U.S.C. § 1930 as they accrue until this case is closed, converted, or dismissed, and shall file post-confirmation quarterly reports with the Office of the United States Trustee until entry of a final decree. Nothing in this Plan releases the Reorganized Debtor from those obligations.

**7.8**  Default Under the Plan. If the Reorganized Debtor fails to make a payment required under this Plan and does not cure within thirty (30) days after written notice, the affected holder may seek such relief as the Bankruptcy Court deems appropriate, including dismissal or conversion of the case.

**ARTICLE VIII**
**RETENTION OF JURISDICTION**

**8.1**  Retention. The Bankruptcy Court shall retain jurisdiction after the Effective Date to: (a) determine the allowance, classification, and priority of Claims; (b) determine applications for compensation of Professionals; (c) resolve disputes arising under the Sale, the Sale Order, the Seller Note, the related security agreement, and the guaranty; (d) enforce and interpret this Plan and the Confirmation Order; (e) enter orders modifying this Plan under section 1193; and (f) enter a final decree closing this case.

**ARTICLE IX**
**MISCELLANEOUS**

**9.1**  Modification. The Debtor may modify this Plan in accordance with section 1193 of the Bankruptcy Code.

**9.2**  Governing Law. Except to the extent the Bankruptcy Code applies, this Plan shall be governed by the laws of the State of New York.

**9.3**  Notices. All notices under this Plan shall be sent to counsel for the Debtor at the address set forth below.

**9.4**  Severability. If any provision of this Plan is held invalid, the remainder shall continue in full force and effect.

**9.5**  Final Decree. The Reorganized Debtor shall move for entry of a final decree upon substantial consummation.

Dated: Rockville Centre, New York
      July 29, 2026              Respectfully submitted,

                                    LAW OFFICES OF CHARLES WERTMAN P.C.

                                    By:  /s/ Charles Wertman
                                    Charles Wertman, Esq.
                                    100 Merrick Road, Suite 304W
                                    Rockville Centre, New York 11570
                                    Tel: (516) 284-0900
                                    charles@cwertmanlaw.com

                                    Attorneys for the Debtor and
                                    Debtor in Possession

**EXHIBIT A**
**LIQUIDATION ANALYSIS**
*Required by 11 U.S.C. § 1190(1)(B); best-interests test under § 1129(a)(7)*

Section 1190(1)(B) of the Bankruptcy Code requires that this Plan include a liquidation analysis. Section 1129(a)(7), made applicable through section 1191, requires that each holder of a Claim receive under this Plan not less than it would receive if this case were converted to one under chapter 7 on the Effective Date. The Debtor's analysis is that holders of general unsecured Claims would receive nothing in a chapter 7 liquidation, and that any distribution under this Plan therefore satisfies the requirement.

The Estate's assets consist of Cash, accounts receivable, and laundry equipment installed in residential buildings. At June 30, 2026 the Debtor held Cash of $53,325.13 and accounts receivable of $6,246.88 [ECF No. 74]. The equipment is carried on the Debtor's internal valuation records at $2,645,085 on a forty percent used basis across approximately 117 locations, and at $1,719,305 on a currently installed basis.

Those figures assume that the equipment remains installed and in service on a functioning route. That assumption does not survive a conversion. A chapter 7 trustee does not operate laundry routes. He liquidates. The machines are washers, dryers, card systems, and kiosks that are plumbed, vented, and wired into the basements of buildings the Debtor does not own, under agreements a chapter 7 trustee would not perform. Realizing on them means disconnecting and removing them at the Estate's expense and reselling used commercial laundry equipment into a wholesale market. The removal, transport, and storage costs fall on the Estate, and the equipment loses the attribute that gives it its stated value, which is that it is installed and generating revenue.

The Debtor need not speculate about the size of that difference, because the Sale measures it. CPIL LLC, an operator of laundry rooms and the buyer most likely to pay the most for this equipment, inspected the Locations and agreed to pay $117,500 for the equipment and route rights at six of them, with the equipment remaining in place. The Debtor's valuation records carry three of those six Locations at a combined $114,600 on the same forty percent used basis. A willing operator, in an arm's length negotiation, with the equipment staying installed, agreed to pay for six Locations approximately what the records assign to three. On a removal basis, with no route and no operator, the realization would be a fraction of that again.

Whatever a chapter 7 trustee realized would be applied first to the Claims of creditors asserting liens on the equipment. Eastern Funding LLC is scheduled in fifteen obligations aggregating $430,590.77 and has filed a Claim asserting $500,000.00. Clean Laundry Funding has filed three Claims aggregating $163,323.43, each asserted as fully secured. Aggregate asserted secured debt is therefore approximately $663,000, before any other lienholder identified by search.

A conversion would also generate a new layer of administrative expense payable ahead of general unsecured creditors, including the chapter 7 trustee's commission under section 326(a), the fees of that trustee's professionals, the costs of removing and storing the equipment, and the unpaid administrative expenses of this chapter 11 case.

After payment of secured Claims to the extent of the value of their collateral and of the administrative expenses of both cases, the Debtor does not believe any funds would remain for distribution to holders of general unsecured Claims. The tables below set out the analysis in detail.

The Debtor will file supporting schedules setting out, line by line, the estimated realizable value of each category of asset in a chapter 7 liquidation, the estimated costs of that

liquidation including the chapter 7 trustee's commission under section 326(a) of the Bankruptcy Code and the costs of removing and storing the equipment, and the resulting distribution to each Class, together with the amended projections referred to in Exhibit B and not later than fourteen days before the Confirmation Hearing.

On the foregoing analysis the recovery to Class 5 in a chapter 7 case is zero. Each holder of an Allowed Class 5 Claim therefore receives more under this Plan than it would receive on conversion, and section 1129(a)(7) of the Bankruptcy Code is satisfied.

**EXHIBIT B**
**PROJECTIONS**
*Required by 11 U.S.C. § 1190(1)(C); feasibility under § 1191(c)(3)*

These projections are derived from the Debtor's monthly operating reports for March, April, May, and June 2026, filed at ECF Nos. 66, 67, 68, and 74. Over those four months the Debtor reported aggregate cash receipts of $390,375.97, aggregate cash disbursements of $363,682.10, and aggregate net cash flow of positive $26,693.87, or an average of $6,673.47 per month. Cash on hand rose from $26,631.26 at March 1, 2026 to $53,325.13 at June 30, 2026.

The projections assume that the Debtor's net operating cash flow after the Effective Date is equal to that historical average. That assumption is conservative. The locations the Debtor is exiting were identified for exit because the payment due to the building approaches or equals the revenue the location generates, so their departure should be at worst neutral to cash flow and may improve it. The Debtor has not projected any improvement on that account.

The Commitment Period is three years, being the minimum period fixed by section 1191(c)(2) of the Bankruptcy Code.

**A. Sources of the Plan Fund over the Commitment Period**

| Source | Amount |
|---|---|
| Cash at closing of the Sale | $25,000.00 |
| Payment due forty-five days after closing | $5,000.00 |
| Seller Note payments (36 x $2,622.46) | $94,408.56 |
| Net operating cash flow, Retained Routes (36 x $6,673.47) | $240,244.92 |
| Total sources | $364,653.48 |

**B. Uses of the Plan Fund**

| Use | Amount |
|---|---|
| Cure Costs under section 365(b)(1) | $16,600.00 |
| Allowed Priority Tax Claims | $415.16 |
| Allowed Administrative Claims | To be fixed on application |
| Allowed Secured Claims, Classes 1 through 4 | To be fixed on allowance and valuation |
| Balance available to Class 5 | Residual |

The two uses shown as to be fixed are the variables that determine the Class 5 distribution. Allowed Administrative Claims will be fixed on application to the Court. The Allowed Secured Claims in Classes 1 through 4 depend upon two determinations: the Allowed amount of the Eastern Funding Claim, which the Debtor disputes and to which it will object, and the value of the collateral securing each secured Claim under section 506(a) of the Bankruptcy Code.

The Debtor discloses that if the Claims in Classes 1 through 4 are Allowed as filed and are fully secured, the amounts required to satisfy them exceed the sources set forth above, and no distribution to Class 5 would be possible. The Debtor does not believe that is the correct outcome. The Eastern Funding Claim was filed after the bar date, asserts a round sum that does not reconcile to the Debtor's schedules or to its own attachments, and is the subject of an objection the Debtor will file. In addition, the Debtor is evaluating whether to surrender to the holders of secured Claims the equipment at the locations it is exiting, in partial satisfaction of those Claims, which would reduce the secured amounts payable under this Plan and enlarge the Class 5 pool by the resulting deficiency.

The Debtor will file amended projections, reflecting the resolution of the Eastern Funding Claim, the valuation of the collateral securing each secured Claim, and the Debtor's determination with respect to surrender, not later than fourteen days before the Confirmation Hearing. Nothing in these projections is offered as a guaranty of any particular distribution to any Class.

## EXHIBIT C
## ASSUMED CONTRACTS AND CURE AMOUNTS, RETAINED ROUTES

The following schedule identifies each building agreement relating to a Retained Route, the counterparty thereto, the basis on which the Debtor's payment obligation is calculated, and any post-petition arrears. Each such agreement is assumed as of the Effective Date unless identified on the schedule as rejected.

| Building / Location | Counterparty | Rent Basis | Post-Petition Arrears |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | TOTAL | $ |