UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

METERED APPLIANCES INC.

Case No. 25-73481-las
Chapter 7

Debtor.
---------------------------------------------------------x

**TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER AUTHORIZING TRUSTEE TO OPERATE DEBTOR'S BUSINESS PURSUANT TO 11 U.S.C. § 721 AND APPROVING A MANAGEMENT AGREEMENT BY AND BETWEEN ALLAN B. MENDELSOHN AS TRUSTEE AND METERED LAUNDRY INC.**

TO: HON. LOUIS A. SCARCELLA
UNITED STATES BANKRUPTCY JUDGE

Allan B. Mendelsohn, the interim trustee (the "Trustee") of the Estate of Metered Appliances Inc., the debtor (the "Debtor") respectfully submits this as and for his application (the "Application") seeking the entry of an Order (i) authorizing the Trustee to operate the Debtor's business for a limited period of time pursuant to section 721 of the Bankruptcy Code, and (ii) in conjunction therewith, approving a certain management agreement (the "Management Agreement") entered into by and between the Trustee and Metered Laundry Inc., the proposed manager (the "Manager") and states as follows:

1. The Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on September 9, 2025 (the "Petition Date"). By Order of the Court dated August 19, 2026, the case was converted from one under chapter 11 of the Bankruptcy Code to one under chapter 7. Allan B. Mendelsohn was appointed interim Trustee.

2. The Debtor's business was the installation of washing/drying equipment at numerous locations throughout New York, its five boroughs and Long Island to provide onsite facilities to multi-unit apartment complexes. The Debtor would maintain and service the

equipment pursuant to agreements entered into by and between the Debtor and the various parties for which it provided the services.

3. Despite seeking relief in this Court, the Debtor failed to disclose the existence of the various leases, licensing agreements and the like, which were executory contracts. Accordingly, these various executory contracts were deemed rejected as a matter of law consistent with the provisions of section 365 of the Bankruptcy Code. As a result, the Trustee, while in a position to "sell" the estate's assets, cannot assume and assign these executory contracts.

4. Faced with this set of facts and circumstances, the Trustee entered into negotiations with the Debtor's principals who, by and through their independent counsel, Joseph Balisok, expressed an interest in purchasing the estate's right, title and interest in the estate's assets, whatever they may be. In reality, the only party that would be able interested in the estate's assets would be the Debtor's principals as they have the relationships with the various parties to the executory contracts and may be able to negotiate a resolution that would allow them to continue the business relationships despite the fact that there is no legally cognizable right to assume and assign these now rejected executory contracts.

5. The Trustee and the Debtor's principals have negotiated a resolution, subject to this Court's approval, pursuant to which they shall buy the estate's right, title and interest, for the purchase price of $210,000 (the "Purchase Price"). However, both the Trustee and the Debtor's principals understand that the longer the business is non-operational, the less valuable the relationships shall become. The fact is that the laundry rooms are not being serviced at this time.

6. In order to preserve whatever remains as an estate asset, the Trustee and the Debtor's former principals have negotiated a proposed Management Agreement that will allow, subject to the entry of an Order approving both the proposed Management Agreement as well as

the Trustee's application seeking authority to operate the Debtor's business pursuant to section 721 of the Bankruptcy Code, to preserve the value.

7. Under the proposed Management Agreement, annexed hereto as Exhibit A, Metered Laundry Inc., shall be authorized to operate the day-to-day business of the Debtor. Pursuant to the proposed Management Agreement, the Manager will assist the Trustee with the operation of the Debtor's business, at all times subject to the Trustee's direction, supervision and control. The terms of the Management Agreement are clearly set forth in the proposed agreement. With regard to the proposed compensation, the Management Agreement provides a mechanism for the Manager to retain 50% of the gross revenue collected from the operations. In other words, the Manager will remit to the Trustee, for the benefit of the estate, 50% of the gross revenue. From the portion retained by the Manager, the Manager, and not the estate shall be responsible for all costs, expenses, salaries and the like incurred by the Manager in connection with the day-to-day operations from the Debtor. Put differently, the estate shall not incur *any* administrative expense associated with the continued operations of the Debtor. The Trustee avers that the terms of the proposed Management Agreement, including the compensation scheme described herein, are reasonable in light of the services to be provided and operational requirements of the Debtor's business.

**THE REQUEST TO OPERATE THE BUSINESS**

8. This Application in addition to seeking approval of the proposed Management Agreement, further seeks authorization for the Trustee to operate the Debtor's business for an interim period, pursuant to section 721 of the Bankruptcy Code. Section 721 of the Bankruptcy Code provides that, "[T]he court may authorize the Trustee to operate the business of the debtor

for a limited period, if such operation is in the best interest of the estate and consistent with the ordinary liquidation of the estate."

9. Here, the Trustee believes that the continued operation of the Debtor's business is appropriate as such operation will enable the Trustee to preserve the Debtor's ongoing value, maintain revenue and most importantly, maintain the business relationships. The proposed operation of the business is not intended to constitute an indefinite continuation of the Debtor's business. Rather, the Trustee proposed to continue the operation of the business until such time as he may complete a sale of the assets to the Manager, pursuant to a separate asset purchase agreement (the "APA") which shall be presented to the Court.

10. To that end, as provided for in section 363(c)(1) of the Bankruptcy Code, "where a trustee is authorized to operate the debtor's business under section 721, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing and may use the property of the estate in the ordinary course of business without notice or a hearing."

11. Section 704(a)(1) of the Bankruptcy Code requires the Trustee to collect and reduce to money property of the estate and to close the estate as expeditiously as is compatible with the best interests of parties in interest. Here, the Trustee believes that the temporary operation of the Debtor's business and the retention of the Manager pursuant to the Management Agreement are consistent with his duties under the Bankruptcy Code. Both the proposed Management Agreement as well as the request for authority to operate the business for a limited period preserve the estate's value for creditors, which, absent this proposed Management Agreement would be otherwise without value at all.

12. Moreover, section 105(a) further authorizes the Court to issue any order, process, or judgment necessary or appropriate to carry out the provisions of the Bankruptcy Code. The Trustee has determined, in the sound exercise of his business judgment, that entering into the proposed Management Agreement is both necessary and appropriate under these facts and circumstances.

13. The Management Agreement does not abdicate the Trustee's control or authority. On the contrary, it expressly reserves the Trustee's rights and duties to the Trustee with no delegation of that authority. The Manager is prohibited from taking those acts that are exclusive to the Trustee.

## **CONCLUSION**

14. The Trustee's request to both enter into the proposed Management Agreement and the request to operate the Debtor's business for a limited period pursuant to section 721 of the Bankruptcy Code represent the exercise of the Trustee's sound business judgment and the relief is sought to maximize the value of the estate's assets for the benefit of the creditors of this estate. Accordingly, he respectfully avers that the entry of an Order authorizing both forms of relief is appropriate.

WHEREFORE, Allan B. Mendelsohn, as Trustee of the Estate of Metered Appliances Inc., respectfully requests that this Honorable Court enter an Order authorizing the Trustee to enter into the proposed Management Agreement and further authorizing the Trustee to operate the Debtor's business for an interim period together with such other and further relief this Court deems just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
September 16, 2026

The Kantrow Law Group, PLLC
Attorneys for Allan B. Mendelsohn, Trustee

BY: S/Fred S. Kantrow
Fred S. Kantrow
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com