Return Date: September 24, 2026
Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re: Chapter 7

Metered Appliances Inc., Case No. 1-25-73481-las

Debtor.
-----------------------------------------------------------X

195 APT. INC.'S OBJECTION TO MOTION OF ALLAN B. MENDELSOHN, ESQ., INTERIM CHAPTER 7 TRUSTEE OF THE ESTATE OF DEBTOR, METERED APPLIANCES INC., SEEKING AUTHORITY TO OPERATE DEBTOR'S BUSINESS AND A PROPOSED MANAGEMENT AGREEMENT BETWEEN TRUSTEE AND LEONARD ORNER

TO: HONORABLE LOUIS A. SCARCELLA
UNITED STATES BANKUPTCY JUDGE

195 Apt. Inc. ("Creditor"), by and through its undersigned counsel, Schneider Buchel, LLP, hereby objects to the application of Allan B. Mendelsohn, Esq., interim Chapter 7 Trustee ("Trustee") of the Estate of Metered Appliances Inc. ("Debtor" or "Metered"), seeking entry of an Order "authorizing the Trustee to enter into a proposed management agreement (the 'Management Agreement') [with Leonard Orner ('Orner'), a shareholder of Debtor and Debtor's former officer], and further authorizing the Trustee to operate the Debtor's business for a limited period pursuant to section 721 of the Bankruptcy Code," and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Creditor does not object to Trustee being authorized to operate Debtor's business.

2. However, the proposed Management Agreement is fundamentally flawed because it permits Trustee and Orner to share equally the gross receipts generated by Debtor's laundry operations before ensuring that Debtor meets its contractual rent or license obligations to, among others, the condominium and cooperative apartment building owners that are entitled to payment

of Debtor's obligations incurred through Debtor's use of the respective building's facilities (hereinafter the "Laundry Agreement[s]"). Creditor is just one such entity which Debtor failed to pay pursuant to the terms of such Laundry Agreement.

3. Under the proposed Management Agreement, Trustee will retain fifty percent (50%) of all gross receipts with Orner receiving the remaining fifty percent (50%) in order to continue operating Debtor's business until such time as Debtor's assets are sold. Orner, in theory, will pay the expenses of Debtor from his 50% share.

4. Putting aside that Creditor lacks confidence in Orner, as Orner operated Debtor's business prior to the conversion during which time Debtor failed to pay all of the rent and/or license payments due and owing, the proposed structure creates a significant risk that landlords, licensors and property owners may not receive the post-petition payments due under their respective Laundry Agreements while Trustee and Orner nevertheless receive substantial compensation.

5. If creditors and interested parties accept Debtor's Chapter 11 filings and pre-bankruptcy activity as true, Debtor does not generate enough funds to satisfy its obligations. As such, prior history teaches us that the contemplated division of gross receipts under the proposed Management Agreement does nothing except reduce substantially the likelihood that landlords, licensors and property owners will receive compensation in full during the Chapter 7 proceeding since the Estate will be retaining 50% without any obligations.

6. Indeed, the proposed Management Agreement fails to establish any mechanism ensuring that the Debtor's rent obligations are satisfied before funds are distributed to either Trustee or Orner. Further, while "Services" section of the Management Agreement sets forth an extensive list of what are to be the day-to-day operations of the Debtor such as maintaining scheduling, supervising staff, customer service, etc., language concerning the payment of Debtor's

obligations for rent and/or license fees is conspicuously absent. Since Trustee is seeking to operate the business as a going concern, it should be paramount that the creditors, which will be enabling such operation, receive due compensation. If 100% of the receipts are insufficient to pay landlords, licensors and property managers in full while in Chapter 7, that shortfall is indicative of the business operation. However, not dedicating 100% of the proceeds to pay such landlords, licensors and property managers, and instead allowing those proceeds to pay professional expenses and pre-petition claims, would constitute a gross injustice to the aforementioned owners who are paramount to keeping Debtor's business running as a going concern.

7. Further, Creditor is concerned about engaging Orner as Trustee's operating partner. The parties and the Court cannot lose sight that Orner's management of Debtor prior to the bankruptcy filing resulted in a business operating at a tremendous deficit. Debtor's business difficulties ultimately resulted in the commencement of a Chapter 11 case, which was unsuccessful and subsequently converted to Chapter 7.

8. Having failed to successfully operate the business before bankruptcy, Orner should not be installed in a position that grants him 50% of the gross receipts generated by estate assets and charged with ensuring that all of Debtor's expenses are satisfied.

## BACKGROUND

9. Debtor is engaged in the business of providing laundry room services to, among others, condominium and cooperative apartment buildings.

10. Debtor installs and maintains laundry equipment within residential and commercial buildings pursuant to leases, licenses, and similar agreements.

11. Residents of the aforementioned buildings pay fees to use the machines, which generates receipts for Debtor.

12. Creditor's agreement with Debtor requires the payment of rent, license fees, or a percentage of collections to the condominium or cooperative apartment where the machines are located.

13. Among other things, Trustee seeks approval of a proposed Management Agreement pursuant to which:

a. Trustee will receive 50% of the gross receipts generated by the business; and

b. Orner will receive the remaining 50%, from which operating expenses are to be paid.

**THE TRUSTEE HAS NOT DEMONSTRATED THAT**
**ORNER'S RETENTION BENEFITS THE ESTATE**

14. While Creditor supports Trustee's request to be authorized to operate Debtor's business under Section 721 of the Bankruptcy Code, such authorization cannot be predicated under the proposed Management Agreement.

15. Under the proposed Management Agreement, Orner will be responsible for the payment of insurance. (*See* proposed Management Agreement, ¶¶ 3.1 and 10.1.)

16. There is no description of the insurance to be obtained, which precludes Creditor from evaluating it. And such insurance must be in place before anyone is installed to manage Debtor's operation under the proposed Management Agreement. In other words, premium payments must be advanced before generating any receipts.

17. Along those lines, the proposed Management Agreement provides as follows:

> 6.3 Disbursements. The Manager shall have the authority to pay the expenses necessary to maintain the business as a going concern subject to the amount which represents not more than fifty (50) percent of the gross receipts realized by the Manager's operation of the business.

> 10.1 Fixed Fee. To the extent necessary, subject to any Operating Order that may be entered by the Bankruptcy Court, and final allowance, the Manager shall be entitled to a fixed fee of fifty (50) percent of the gross revenue generated by the operation of the business on a monthly basis, prorated daily, for a partial month (the "Fee"). The Fee shall be the compensation for all services provided by the Manager pursuant to this Management Agreement. No bonus, commission, success fee, equity, severance, or other compensation is provided for herein. For the purposes of clarity, the Manager shall remit 50% of the gross revenues collected to the Trustee for the benefit of the Debtor's estate. From the 50% of the gross revenues retained by the Manager, the Manage shall pay **all** expenses incurred by the Manager in its operations. For the avoidance of doubt, expenses incurred include all expenses commensurate with the operations; e.g., labor, maintenance of equipment, taxes, insurance, parts, and the like. Under no circumstances shall the Trustee be responsible for any expenses.

(*See* proposed Management Agreement, ¶¶ 6.3 and 10.1.)

18. Trustee has not demonstrated that either Debtor's business operation requires the participation of Orner specifically or that it is appropriate to compensate Orner with 50% of the gross receipts, given Metered's demonstrated difficulties in the underlying business operation under Orner's guidance and leadership. We cannot lose sight that Orner was the individual responsible for operating Debtor before the bankruptcy filing and which lead to the filing of a Chapter 11 bankruptcy case. Debtor's reorganization effort failed, and the case was ultimately converted to Chapter 7.

19. Under these circumstances, Trustee has not demonstrated that Orner possesses unique qualifications warranting the proposed compensation structure. To the contrary, the proposed Management Agreement effectively rewards the very individual who was unable to successfully operate the business pre-conversion.

## RENT AND LICENSE OBLIGATIONS MUST BE PAID BEFORE RECEIPTS ARE DISTRIBUTED TO TRUSTEE AND/OR ORNER

20. Creditor is also concerned with the proposed Management Agreement because it fails to expressly state that the fees due under the Laundry Agreements are to be paid to the extent possible during Orner's operation of the business and further permits distributions based upon gross receipts without first requiring the payment of Debtor's contractual rent and license obligations.

21. As an initial point, Creditor argues that any Management Agreement accepted by the Court should contain language explicitly stating that any rents/fees due under the Laundry Agreement are permitted to be paid by the Manager in the regular course of the operation of Debtor's business. Prior to Debtor's bankruptcy petition, said Laundry Agreements were the vehicle by which Debtor generated receipts. Should the operation of the business continue in the interim period preceding the sale of Debtor's assets, Debtor should be bound to honor the terms of those Laundry Agreement to the best of its ability. Article 6.3 of the Management Agreement provides only for the payment of "expenses necessary to maintain the business as a going concern". Based on the pre-petition history of this matter and Debtor's previous operation of the business while neglecting to remit the rents/license fees due under the Laundry Agreements, language should be included in the Management Agreement directing the Manager to pay such sums.

22. Additionally, and in furtherance of the above, the distribution of the gross receipts is not conducive to Debtor's ability to honor its obligations under the Laundry Agreements. The estate's receipts are generated solely because the laundry equipment remains installed in condominium and cooperative apartment buildings (and perhaps commercial buildings) pursuant to the Laundry Agreements. The landlords and licensors of the respective buildings are entitled to

compensation under those Laundry Agreements, whether in the form of fixed monthly payments, percentage rent, or other contractual consideration. This is especially true where Trustee wishes to use Creditor's (and similarly situated creditors) building to allow the business to operate as an ongoing concern.

23. Yet under the proposed arrangement, Trustee and Orner receive their respective shares first, thereby making the building owners bear the risk that insufficient funds remain to satisfy the Debtor's rent and license fees obligations. This method is simply unfair.

24. By way of example, if Debtor has monthly contractual rent and license fee obligations totaling $100,000.00, but generates only $90,000.00 in collections for that month, the proposed Management Agreement would result as follows:

a. the Trustee to receive $45,000.00; and

b. Orner to receive $45,000.00 (from which expenses are supposed to be paid), while leaving property owners with a substantial rent deficiency (even assuming, but not conceding, that they are paid).

25. Such a result is inequitable and commercially unreasonable. The receipts collected from the laundry operations are generated because the machines occupy space belonging to, among others, the condominium and cooperative apartment owners. Without those locations, there would be no receipts stream whatsoever. Therefore, the rent and receipts-sharing obligations owed to those property owners should be paid before any distribution is made to either the Trustee or Orner.

**THE PROPOSED STRUCTURE CREATES THE**
**<u>POTENTIAL FOR UNJUST ENRICHMENT</u>**

26. The proposed Management Agreement creates a situation in which the Trustee could receive substantial compensation even while the estate fails to satisfy the very contractual obligations necessary to generate the receipts being collected.

27. Permitting the Trustee to retain 50% of gross receipts regardless of whether the

underlying rent obligations are satisfied would result in the Trustee benefiting from funds that properly should be used to pay landlords and property owners. Such a structure unjustly enriches the Estate to the detriment of parties whose properties are essential to the operation of the business.

28. Any management arrangement approved by the Court should including language permitted the Manager to pay rent/license fees under the Laundry Agreements, and require that all rent, license fees, percentage payments, and similar contractual obligations be satisfied from gross receipts before any management fee, or receipts-sharing distribution is paid to/ retained by either Trustee or Orner. Creditor and other similarly situated creditors should not be forced to finance Debtor's post-conversion operation.

**RESERVATION OF RIGHTS**

29. Creditor reserves the right to supplement this Objection and raise additional objections at or before the hearing on the Application.

**CONCLUSION**

WHEREFORE, Creditor respectfully requests that the Court:

a. Deny approval of the proposed Management Agreement in its current form;

b. Require the additional of language stating that rents/licensee fees may be paid to condominium and cooperative apartment owners pursuant to the Laundry Agreements which generate Debtor's receipts'

c. Require that all rent, license fees, percentage payments, and other obligations owed to condominium and cooperative apartment owners be paid from gross receipts before any receipts are distributed to the Trustee or Orner;

d. Require the Trustee to demonstrate the necessity and benefit of retaining Orner and the reasonableness of the proposed compensation arrangement; and

e. Grant such other and further relief as the Court deems just and proper.

Dated: Woodbury, New York
September 22, 2026

Schneider Buchel LLP
*Attorneys for Creditor*

By: *Mitchell Flachner*

Mitchell Flachner
60 Crossways Park Drive West, Suite 340
Woodbury, New York 11797
Telephone No.: (516) 393-5555
Email: Mflachner@schneiderbuchel.com

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Objection to Motion of Allan B. Mendelhoson, Interim Chapter 7 Trustee of the Estate of Debtor, Metered Appliances, Inc., Seeking Authority to Operate Debtor's Business and a Proposed Management Agreement Between Trustee and Leonard Orner was served today, September 22, 2026, via the Court's ECF system on those parties registered to receive notice in this case and via email to the Trustee's counsel, The Kantrow Law Group, PLLC at fkantrow@thekantrowlawgroup.com.

Dated: Woodbury, New York
September 22, 2026

SCHNEIDER BUCHEL LLP
*Attorneys for Creditor*

By: Mitchell Flachner
Mitchell Flachner