The Kantrow Law Group, PLLC
*Attorneys for Allan B. Mendelsohn, Trustee*
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
Fred S. Kantrow, Esq.
Hailey L. Kantrow, Esq.
516 703 3672

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

RETURN DATE: **11/4/26**
TIME: **11:00 a.m.**

----------------------------------------------------------x

In re:

METERED APPLIANCES INC.

Debtor.

Case No. 25-73481-ajb
Chapter 7

----------------------------------------------------------x

**TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE SERVICE OF A SUBPOENA UPON CHARLES WERTMAN, ESQ. AND THE LAW OFFICES OF CHARLES WERTMAN, P.C.**
**DIRECTING THE PRODUCTION OF DOCUMENTS AND ORAL DEPOSITION**

TO: HON. ALICE J. BYOWITZ
UNITED STATES BANKRUPTCY JUDGE

Allan B. Mendelsohn, the interim trustee (the "Trustee") of the Estate of Metered Appliances Inc., the debtor (the "Debtor"), by and through his attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for his application (the "Application") seeking the entry of an Order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the service of a subpoena upon Law Offices of Charles Wertman and Charles Wertman, Esq. ("Wertman"), directing the production of documents and appearance for an oral deposition and states as follows:

## BACKGROUND

1. On September 9, 2025, (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor was represented by Wertman in connection with the filing. After approximately one year in chapter 11, the Court, pursuant to

an Order of the Hon. John P. Mastando III, converted the case to a case under chapter 7 of the Bankruptcy Code. The Order was dated August 19, 2026 (the "Conversion Date"). Allan B. Mendelsohn was appointed the interim Trustee and thereafter duly qualified as the permanent case Trustee.

2. The Debtor operated its business as a provider of laundry services by installing and maintaining washing machines and clothes dryers at numerous locations throughout New York City and Long Island. The machines were installed at multi-unit dwellings to offer laundry services to residents. The Debtor entered into leases or license agreements with the various multi-unit dwellings pursuant to which the Debtor was obligated to pay modest rents to the various multi-unit owners.

3. A review of the Debtor's chapter 11 petition and schedules revealed a curious and disturbing fact. Despite having over 100 leases and/or license agreements, all of which would have been considered executory contracts, the Debtor failed to disclose the existence of a single one. As a result of this failure, the Debtor never moved to assume, reject, or otherwise extend the time to seek to assume or reject these executory contracts. A few of those parties that entered into these various agreements did enter into stipulations with the Debtor during the course of the chapter 11 case.

4. Upon conversion of the case to a case under chapter 7, the Trustee, in an effort to maximize recovery for the estate's creditors, and in an effort to discharge his fiduciary obligation, determined to enter into a management agreement with a proposed manager which management was to be undertaken by the Debtor's former principals. The Trustee avers that this proposed management agreement was appropriate under the facts and circumstances of this case. By entering into the proposed management agreement, the Trustee was hopeful that he could sell the

estate's right, title and interest, in the estate's assets to the only persons who had a reasonable possibility of making a proposal to purchase the estate's interest. In other words, the Debtor's former insiders were the only persons with the relationships with the various customers that would allow for an opportunity to reach a consensual resolution with the customers to remain at the locations and provide services. Absent their ability to realize such consensual resolution, no customer was obligated to continue to allow the Debtor to service the locations as a direct result of the Debtor's abject failure to schedule any executory contracts or otherwise move to assume, reject, or extend the time to do so. From the Trustee's perspective, each of the unscheduled executory contracts were deemed rejected by operation of law leaving the Trustee with nothing to sell.

5. For myriad reasons, the Court (Hon. Louis A. Scarcella) determined that the Trustee's proposal was not one that the Court could approve. As a result, the Trustee's attempt to market and sell the estate's interest, whatever remained of it, failed.

6. Upon his appointment, the Trustee demanded, by letter, of Wertman that he turn over to the Trustee the entirety of his file in order for the Trustee to better understand what transpired during the course of the chapter 11 case. The Trustee seeks to investigate whether the Debtor's counsel failed to take the appropriate steps to preserve assets of the estate for the benefit of the creditors of the estate.

7. The Trustee's initial demand for turn over of the file was communicated by letter dated August 28, 2026. In addition to a demand for turn over of the file, the Trustee further advised Wertman that consistent with the Order converting the case to chapter 7, the Debtor was obligated to comply with Rule 1019(e) of the Bankruptcy Rules and was required to do so by not later than

15 days from the entry of the Order converting the case. The Debtor has failed or refused to comply with this obligation.

8. Rather than providing the turn over of the entirety of the file, Wertman instead sent a letter dated August 31, 2026, in which Wertman set forth, among other things, that "the file also contains communications with the Debtor's principals in their individual capacities, including as to their personal exposure on obligations of the Debtor. Those are not the corporation's privilege[,] and the Trustee cannot waive them." That raises significant questions as to whose interests Wertman was representing. He was allegedly retained by the Debtor in a chapter 11 case and therefore would have been a fiduciary to the estate and its creditors. *If* Wertman knew of actions that could be maintained by the Debtor against the Debtor's principals, why would he have been counseling the Debtor's principals?

9. In addition to Wertman's arguments about privileged communications, Wertman also argued that he intended to bring on a motion seeking to set aside Judge Mastando's Order converting the case and thus claimed that he would not turn over the file to the Trustee because as he stated "[I]f the motion is granted the Debtor will be restored to possession, and control of the corporation's privilege will return to it. That is a further reason to have the scope of production fixed by the Court rather than by correspondence." Thus, Wertman failed or refused to turn over the file to the Trustee.

10. On September 28, 2026, the Trustee, through his attorneys, renewed his demand that Weertman turn over the entirety of his file. The September 28, 2026, letter reminded Wertman that the privilege belonged to the Trustee; that the Debtor remained in non-compliance with the Court's August 19, 2026, Order insofar as it never filed the Rule 1019 schedule; and made a new demand upon Wertman – to wit: that he provide the Trustee with a copy of any malpractice

insurance polity maintained. The demand for the malpractice insurance policy was predicated on the Trustee's determination that it was more likely than not that the estate has a claim against Wertman for his failure to schedule executory contracts; move to assume/reject or otherwise extend the Debtor's time to assume the executory contracts, and the damages that flows to the estate based upon these alleged failures, In essence, Wertman's failures have left the estate and its creditors with no ability to market and sell what may well have been valuable assets.

11. The September 28, 2026, letter has gone without response of any type.

12. While the Debtor filed and subsequently withdrew its motion seeking to set aside the Court's Conversion Order, the Trustee seeks to better understand the Debtor's theories of what it could accomplish in chapter 11 particularly in light of the fact that the Debtor *lost* all of its executory contracts which arguably was the most valuable assets. The Trustee made a demand upon the Debtor's counsel to turn over the entirety of the Debtor's file. First in the letter dated August 28, 2026, and again in the letter dated September 28, 2026. The Trustee set forth his position that the Debtor's counsel's file is property of the bankruptcy estate and controlled by the Trustee. The Trustee relies upon the Supreme Court's decision in *CFTC v. Weintraub,* 471 U.S. 343 (1985) in which the Court held that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications. 471 U.S. at 348-358.

13. Section 542(e) of the Bankruptcy Code provides that "subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recoded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to disclose such recorded information to the trustee." *11 U.S.C. § 542.*

14. In *Weintraub,* the respondents argued that "subject to any applicable privilege" language meant that an attorney could not be compelled to turn over to the trustee materials within the corporation's attorney-client privilege. In addition, they argued that the language would be rendered superfluous if the trustee had the power to waive the corporation's privilege." *Id.* at 350.

15. In rejecting the respondent's arguments, the Court reasoned that the statute failed to address the trustee's authority to waive the corporation's attorney-client privilege. Moreover, the Court concluded that a "privilege that has been properly waived is not an "applicable" privilege for the purposes of § 542(e)." *Id.* This reasoning likewise applies to any argument that the so-called work doctrine also acts as a shield to preclude the Debtor's counsel from having to turnover its file to the Trustee.

16. The Court also noted that the legislative history also supported a conclusion that Congress did not intend to give debtor's directors the right to assert the corporation's attorney-client privilege against the trustee. "Indeed, statements made by Members of Congress regarding the effect of § 542(e) 'specifically deny any attempt to create an attorney-client privilege assertable on behalf of the debtor against the trustee.'" *Id.* at 350 *citing In re O.P.M. Leasing Services, Inc.,* 13 B.R. 54, 70 (S.D.N.Y. 1981), *aff'd* 670 F.2d 383.

17. "Because the attorney-client privilege is controlled, outside of bankruptcy, by a corporation's management, the actor whose duties mostly closely resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underling the bankruptcy laws." *Id. at* 351-52.

18. "The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. He is directed to investigate the debtor's financial affairs, and is empowered to sue

officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property. Subject to court approval, he may use, sell, or lease property of the estate." (Internal citations omitted). *Id.*

19. "As even this brief and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. In contract, the powers of the debtor's directors are severely limited. Their role is to turn over the corporation's property to the trustee and to provide certain information to the trustee and to creditors. Congress contemplated that, when a trustee is appointed, he assumes control of the business and the debtor's directors are completely ousted." *Id.* at 352-53.

20. "In light of the Code's allocation of responsibilities, it is clear that the trustee plays the role most closely analogous to that of a solvent corporation's management." *Id.* Thus, the Court concluded that allowing the debtor to control the attorney-client privilege fails to advance the goals of the bankruptcy process.

21. The Debtor's counsel is in a unique position. In order to complete the Debtor's schedules and to seek conversion of the case from one now under chapter 7 back to one under chapter 11, it had to have reviewed documents, all of which would be property of the estate, in order to support its application. In fact, the Debtor's counsel, in drafting and filing the motion seeking conversion, made numerous representations and must have reviewed information in order to make those representations. Wertman's explanation that he was also advising the Debtor's principals is troubling in and of itself. His failure to schedule a single executory contract only makes matters that much worse. The Trustee, in his investigation, seeks to determine what documents the Debtor provided to counsel in order to comply with its obligations to file schedules.

Interestingly, questions posed by the Trustee's counsel to the Debtor's counsel were met with resistance. The Debtor and its counsel have caused the issues that are now before this Court.

22. Faced with only the prosecution of causes of action, whether under chapter 5 of the Bankruptcy Code or against the Debtor's counsel for potential malpractice, the Debtor's counsel should not be able to hide from the turn over of the file to the Trustee. In order to better understand this and be in a better position to recover assets for the numerous creditors in this case, the Trustee must review the documents held by the Debtor's counsel. The Debtor's counsel cannot avoid the turnover of the documents but advised the Trustee that before it was to comply it would review the status of the law. From the Trustee's perspective, the law is crystal clear. *CFTC v. Weintraub,* decided in 1985, clarified the issue of the attorney-client privilege in a corporate chapter 7 bankruptcy case.

23. The stonewalling that the Trustee has encountered from those persons seemingly under the control of the Debtor is a prime example of why the Trustee seeks the Debtor's counsel's files. Because Debtor's counsel had fiduciary obligation to the bankruptcy estate, it is reasonable for the Trustee to understand what investigation and steps Debtor's counsel took to meets its obligations and to understand what theories allowed the conclusion that this Debtor simply ignored its obligations to schedule assets that are no longer available to satisfy creditors of the estate.

24. The Trustee does not seek this relief without considering its implications. However, the Debtor has done nothing to convince the Trustee that he has an alternative. The unreasonable delay in providing the information to the Trustee; the failure to comply with this Court's prior Order and arguing that somehow he was not obligated to turn over the file because he was also counseling the Debtor's principals, all caused significant concern for the Trustee. The

Debtor's counsel's files which constitute property of the bankruptcy estate must be turned over to the Trustee.

**RELIEF REQUESTED**

24. By this Application, the Trustee seeks an Order of this Court, substantially in the form of the proposed Order annexed hereto compelling Rosen to produce documents specified in the Schedule and designating a person from Wertman's office to appear and offer testimony.

25. Bankruptcy Rule 2004 provides, in pertinent part, as follows:

> (a) Examination on Motion. On Motion of any party in interest, the court may order the examination of any entity.
>
> (b) Scope of Examination. The examination of any entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . [T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired by the debtor for purposes of consummating a plan and the consideration given therefor, and any other matter relevant to the case or to the formulation of a plan.
>
> (c) Compelling Attendance and Production of Documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.
>
> Fed. R. Bankr. P. 2004(a), (c), (d).

26. Examinations under Rule 2004 include within their scope, *inter alia,* any matter that may relate to the property and assets of the estate; the financial condition of the debtor; any matter that may affect the administration of a debtor's estate. Courts have consistently recognized that the scope of discovery under Bankruptcy Rule 2004 is extraordinarily broad. *See, e.g., In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993) (likening the scope of a Rule 2004 examination to a 'fishing expedition'); *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996);

*In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (holding that the scope of a Rule 2004 examination is "admittedly unfettered and broad". (citations omitted).

27. The discovery sought by this Application goes directly to the acts, conduct and administration of the Debtor's estate. Specifically, the Trustee seeks, *inter alia,* information relating to the Debtor's finances and debt. Accordingly, the requested discovery is directly related to the "acts, conduct or property or to the liabilities of the Debtor's estate" and is appropriate under Rule 2004.

**WHEREFORE,** the Trustee respectfully requests that this Court grant the Application in its entirety and enter an Order substantially in the form of the proposed Order annexed hereto and grant any such further relief as this Court deems just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
October 7, 2023

The Kantrow Law Group, PLLC
Attorneys for Allan B. Mendelsohn, Trustee

BY: S/Fred S. Kantrow
Fred S. Kantrow
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com