The Kantrow Law Group, PLLC
*Attorneys for Allan B. Mendelsohn, Trustee*
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
Fred S. Kantrow, Esq.
Hailey L. Kantrow, Esq.
516 703 3672

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

RETURN DATE: **11/4/26**
TIME: **11:00 a.m.**

-----------------------------------------------------------x
In re:

METERED APPLIANCES INC.

Debtor.

Case No. 25-73481-ajb
Chapter 7

-----------------------------------------------------------x

**TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE SERVICE OF A SUBPOENA UPON NORMAN ORNER AND LENNY ORNER DIRECTING THE PRODUCTION OF DOCUMENTS AND ORAL DEPOSITION**

TO: HON. ALICE J. BYOWITZ
UNITED STATES BANKRUPTCY JUDGE

Allan B. Mendelsohn, the chapter 7 trustee (the "Trustee") by and through his attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for its application (the "Application") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the entry of an Order authorizing the Trustee to issue subpoenas to (i) Norman Orner; and (ii) Lenny Orner, the debtors former principals directing their appearance at an oral deposition and directing the production of documents, and states as follows:

**FACTS**

1. On September 9, 2025, (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor was represented by Wertman in connection with the filing. After approximately one year in chapter 11, the Court, pursuant to an Order of the Hon. John P. Mastando III, converted the case to a case under chapter 7 of the Bankruptcy Code. The Order was dated August 19, 2026 (the "Conversion Date"). Allan B.

Mendelsohn was appointed the interim Trustee and thereafter duly qualified as the permanent case Trustee.

2. The Debtor operated its business as a provider of laundry services by installing and maintaining washing machines and clothes dryers at numerous locations throughout New York City and Long Island. The machines were installed at multi-unit dwellings to offer laundry services to residents. The Debtor entered into leases or license agreements with the various multi-unit dwellings pursuant to which the Debtor was obligated to pay modest rents to the various multi-unit owners.

3. A review of the Debtor's chapter 11 petition and schedules revealed a curious and disturbing fact. Despite having over 100 leases and/or license agreements, all of which would have been considered executory contracts, the Debtor failed to disclose the existence of a single one. As a result of this failure, the Debtor never moved to assume, reject, or otherwise extend the time to seek to assume or reject these executory contracts. A few of those parties that entered into these various agreements did enter into stipulations with the Debtor during the course of the chapter 11 case.

4. Upon conversion of the case to a case under chapter 7, the Trustee, in an effort to maximize recovery for the estate's creditors, and in an effort to discharge his fiduciary obligation, determined to enter into a management agreement with a proposed manager which management was to be undertaken by the Debtor's former principals. The Trustee avers that this proposed management agreement was appropriate under the facts and circumstances of this case. By entering into the proposed management agreement, the Trustee was hopeful that he could sell the estate's right, title and interest, in the estate's assets to the only persons who had a reasonable possibility of making a proposal to purchase the estate's interest. In other words, the Debtor's

former insiders were the only persons with the relationships with the various customers that would allow for an opportunity to reach a consensual resolution with the customers to remain at the locations and provide services. Absent their ability to realize such consensual resolution, no customer was obligated to continue to allow the Debtor to service the locations as a direct result of the Debtor's abject failure to schedule any executory contracts or otherwise move to assume, reject, or extend the time to do so. From the Trustee's perspective, each of the unscheduled executory contracts were deemed rejected by operation of law leaving the Trustee with nothing to sell.

5. For myriad reasons, the Court (Hon. Louis A. Scarcella) determined that the Trustee's proposal was not one that the Court could approve. As a result, the Trustee's attempt to market and sell the estate's interest, whatever remained of it, failed.

6. The Trustee now must determine what assets, if any, are available for the benefit of the creditors of this estate. The Trustee has significant concerns regarding what transpired during the chapter 11 case and more important what has transpired since conversion. By way of example, the Trustee notes that the Debtor's website, meteredappliances.com, which is property of the estate, continues to be operative and continues to direct interested parties to the Debtor's telephone number of 718 426 6717, which continues to function, which is also property of the estate. By contacting the Debtor, the Debtor remains in operation despite the fact that the Debtor is subject to liquidation in chapter 7. Moreover, because so much of the Debtor's business is conducted in cash at over 100 locations, there is no way for the Trustee to be certain that the Debtor's former principals are continuing to use assets of the estate for their own benefit.

7. The Trustee must investigate to determine what, if any, causes of action may be commenced for the benefit of the estate's creditors.

## RELIEF REQUESTED

8. By this Application, the Trustee seeks an Order of this Court authorizing the issuance of subpoenas compelling both Norman Orner and Lenny Orner to produce the documents specified in Schedule "A" to the proposed subpoena and directing their appearance at an oral deposition. These documents are those that speak to the Debtor's assets and the ability to recover assets for the benefits of the creditors of the estate.

9. Bankruptcy Rule 2004 provides, in pertinent part, as follows:

> (a) Examination on Motion. On Motion of any party in interest, the court may order the examination of any entity.
>
> (b) Scope of Examination. The examination of any entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . [T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired by the debtor for purposes of consummating a plan and the consideration given therefore, and any other matter relevant to the case or to the formulation of a plan.
>
> (c) Compelling Attendance and Production of Documents. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. As an officer of the court, an attorney may issue and sign a subpoena on behalf of the

court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.

Fed. R. Bankr. P. 2004(a), (c), (d).

10. Examinations under Rule 2004 include within their scope, inter alia, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; any matter that may affect the administration of a debtor's estate. See, Fed. R. Bankr. P. 2004(a), (c) and (d). Courts have consistently recognized that the scope of discovery under Bankruptcy Rule 2004 is extraordinarily broad. See, e.g., *In re Ionosphere Clubs, Inc*., 156 B.R. 414, 432 (S.D.N.Y. 1993) (likening the scope of a Rule 2004 examination to a 'fishing expedition'); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (holding that the scope of a Rule 2004 examination is "admittedly unfettered and broad". (citations omitted).

11. The discovery sought by this Application goes directly to the acts, conduct and administration of the Debtor's estate. Specifically, the Trustee seeks, inter alia, information relating to the Debtor's assets, the disclosure made in connection with the petition and schedules and truthfulness of the Debtor, generally. Accordingly, the requested discovery is directly related to the acts, conduct or property or to the liabilities of the Debtor's estate and is appropriate under Rule 2004.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order: (a) Authorizing the Trustee to conduct a Rule 2004 examination of both Norman Orner and Lenny Orner (b) Authorizing issuance of a subpoena compelling production of documents set forth in Schedule "A" and directing an appearance at an oral deposition; and (c) Granting such other and further relief as this Court deems just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
October 8, 2026

The Kantrow Law Group, PLLC
Attorneys for Allan B. Mendelsohn

BY: S/Fred S. Kantrow
Fred S. Kantrow
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com

.